STATE *ex rel.* DONALD C. TONEY

*v.*

OKEY A. MILLS, *Sheriff* OF RALEIGH COUNTY

(No. 11053)

Submitted March 10, 1959.    Decided March 17, 1959.

*William G. Thompson,* for relator.

*W. W. Barron,* Attorney General, *Anthony J. Sparacino,* Prosecuting Attorney, Raleigh County, for respondent.

GIVEN, PRESIDENT:

Relator, State of West Virginia, at the relation of Donald C. Toney, on February 19, 1959, filed its petition against respondent Okey A. Mills, Sheriff of Raleigh County, praying that a writ of habeas corpus ad subjiciendum issue against respondent, directing the release from custody of John Arthur Toney, an infant over fourteen years of age, son of Donald C. Toney. The petition alleges, in effect, that the Juvenile Court of Raleigh County had imposed a sentence on the infant without having obtained jurisdiction of the person of the infant, that no record of any hearing on any charge against the infant existed, and that the infant, or person having legal custody of the infant, had been given no notice of any hearing on any charge. An order was entered by this Court March 17, 1959, discharging the writ issued, and custody of the infant was remanded to respondent, and the reasons for the entry of the order are attempted to be stated in this opinion.

The answer of respondent alleges, in effect, that a petition had been filed in the Juvenile Court of Raleigh County charging that the infant "did wilfully interrupt, molest and disturb free schools being lawfully carried on, by means of telephoning certain public officials that bombs had been placed in the local Woodrow Wilson High School and Beckley Junior High School"; that the juvenile court, after proper notice and hearing, on the 14th day of February, 1959, found the infant guilty of the charge of delinquency, and sentenced him "at confinement in the Industrial School for Boys at Pruntytown, West Virginia, until he arrives at the age of twenty one years unless sooner discharged as provided by law"; and that by the order imposing the sentence, the infant was placed in the care and custody of respondent until transferred to the industrial school. Certified copies of the petition and the order are exhibited with the answer.

The replication to the answer alleges, in effect, that

the infant was not legally arrested; that the statement of the infant admitting guilt was obtained by police officers by improper means; that the infant, or those having his legal custody, had no proper notice of the charge or of the hearing, and no opportunity to employ counsel; that no "lawful" petition against the infant was ever filed; and that no guardian ad litem was appointed for the infant, as required by the statute. The replication says, however, that on the morning of the hearing the father "and his wife went into the Judge's chambers, selected seats and the Judge inquired of the boy if he made the call. The boy replied that he did make the call, and that he was guilty * * *".

The evidence conclusively establishes, principally by stipulation, that in the afternoon of February 12, 1959, the infant, over fourteen years of age, was directed by the principal of the school then being attended by him to go to the police station of the City of Beckley. The principal of the school had been requested by the city police to make the direction. On arrival at the police station the infant was detained until the arrival of other children from the school who were, apparently, supposed to have information as to the making of the telephone call concerning the bombs. Later the statement admitting guilt was made and signed by the infant. There is no material or substantial evidence that any improper conduct on the part of the police induced the making of the statement. The statement, exhibited with the answer, states that it was voluntarily made, and that "On the night of February 9th, 1959, at approximately 9 P.M., I was at Bennetts Store at Calloway Heights and was talking to Gary Walker, John 'Pee-Wee' Mandeville, Harold Smith and Sammy Kessler and Gary Walker. Smith and Kessler dared me to make a phone call to the school and tell them that a bomb was planted in Junior High and Woodrow Wilson High School * * * I left Bennetts Store at approximately 9:30 P.M. after telling them that I was going to go home and make the call * * * I asked information for the phone number of the City

Police Station. After getting the number I called and told the girl, 'You better watch out because there is a bomb in Junior High and WWHS Schools.' I then hung up the phone and later on went to bed."

The father testified that on the evening of the twelfth, he inquired of the judge of the juvenile court by telephone whether he could, on that evening, have the boy released from custody, but was told to come to the office of the judge on the following morning, which he did. The father, at no subsequent time, requested the judge of the juvenile court to release his son from legal custody. On arrival at the office of the judge the father was advised that the hearing would be at ten o'clock on the following day, February 14. The hearing was at the appointed hour, the father and mother of the infant being present, as well as the other juveniles implicated in the making of the telephone call, with one or both of the parents of each of them being present. Also present were the two city police officers who took the statement of the boy, a newspaper reporter and a minister. The probation officer of the juvenile court was in an adjoining room at the time of the hearing, and was called into the hearing room before the pronouncement of sentence. The mother testified that at the hearing the "Judge began talking to the boys. He started by asking their name and age of each boy present. When he got to the last boy, which was John, he said 'and your name is John Toney,' and John said 'yes', and he said 'how old are you?' John said 'I am fourteen', and he said 'John, do you admit that you made the phone call to the law to tell them there was a bomb in both schools?' John said 'yes, sir.' He said 'you admit that you phoned them and told them there was a bomb in both schools,' and John said 'yes, sir' * * *"

On the evening of the twelfth, after being informed that his son was held in custody, the father talked with an attorney in the City of Beckley concerning the detention of the boy. The attorney, however, was not employed to represent the boy and was not present at the

hearing, though it appears probable that he visited the office of the juvenile judge at the time the father was in the offices, on the thirteenth, and inquired of the judge as to the time fixed for the hearing. None of the interested parties was represented by counsel at the hearing, and no request was made for an opportunity to employ counsel, or for any continuance of the hearing.

Though the order of the court imposing sentence recites that the "court appointed D. C. Toney, Father, as guardian ad litem to represent the defendant in this case and the defendant and said guardian ad litem each being present", and though the name of the father, as "Parent, Guardian or Custodian", was on the petition, it was stipulated "that same was placed thereon by the Official Reporter for the Juvenile Court of Raleigh County without the prior consent or knowledge of the said D. C. Toney; that the true facts are that the presiding Judge of the Juvenile Court of Raleigh County did not by judicial pronouncement nor by advice of the bench or otherwise advise or instruct the said D. C. Toney that he had been appointed as guardian ad litem for his said son, and that the said D. C. Toney did not in fact appear or participate in the hearing held herein on the morning of February 14th in the capacity of guardian ad litem for his said son * * *". It was further stipulated, however, that "the petition was at that time prepared and fully executed and in existence in the office of the Judge of the Juvenile Court of Raleigh County".

The parties further stipulated that at the time the juvenile made the telephone call concerning the bombs, "* * * neither the Woodrow Wilson High School nor the Beckley Junior High School was in fact convened in session; that on the following day these schools did not convene at the customary time on the morning of February 10th by reason of the investigation of the Police Officers of the City of Beckley, West Virginia, and the school authorities, based upon the information received by them in such telephone call."

The stipulation also establishes that no witness was

sworn at the time of the hearing; that no summons or other written notice of the time of the hearing was served on the juvenile, the father or the mother; and that the probation officer of the Juvenile Court of Raleigh County was not asked to make and made no written report of any investigation of the charges against the juvenile.

Code, 61-6-14, insofar as pertinent, reads: "If any person wilfully interrupt, molest or disturb any free school * * * he shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than ten nor more than fifty dollars, and, at the discretion of the court, be confined in jail not more than thirty days in addition to such fine."

By Chapter 1 of the Acts of the First Extraordinary Session of the 1936 Legislature, Chapter 49 of the official Code of West Virginia, relating to child welfare, was amended so as to provide a comprehensive system of dealing with the conduct of delinquent children. As subsequently amended the Act defines a "delinquent child" as "a person under the age of eighteen years who: (1) Violates a law or municipal ordinance * * *". It was provided in the Act that the State Department of Public Assistance, or a "reputable person" who believes that a child is delinquent, "may present a petition setting forth the facts to the court or judge having juvenile jurisdiction", and that after hearing, the court may "(4) commit the child to an industrial home or correctional institution for minors". The Act further provides that the "court or judge may, upon request of the child or of the person named in the petition, appoint counsel to represent the child", and that the clerk of the court "shall notify, if practicable, the chief probation officer", and that the probation officer "shall: (1) make investigation of the case * * *".

In *Ex Parte Evans*, 42 W. Va. 242, 24 S. E. 888, we held: "1. The remedy for mere irregularity in the process or mere error in the proceedings of courts of com-

petent jurisdiction is by appeal or writ of error, not by *habeas corpus;* otherwise if the process or proceedings be void. 2. Imprisonment under the process or order of a court of competent jurisdiction, however, irregular or erroneous, not being void, is not illegal imprisonment, so as to warrant discharge on *habeas corpus."* This Court has consistently, and often, followed the holdings. See *State ex rel. Hinkle* v. *Skeen, Warden,* 138 W. Va. 116, 75 S. E. 2d 223; *State ex rel. Lovejoy* v. *Skeen, Warden,* 138 W. Va. 901, 78 S. E. 2d 456; *State ex rel. Hall* v. *Skeen, Warden,* 136 W. Va. 805, 68 S. E. 2d 683; *In the matter of Dye* v. *Skeen, Warden,* 135 W. Va. 90, 62 S. E. 2d 681; *State ex rel. Nutter* v. *Mace,* 130 W. Va. 676, 44 S. E. 2d 851; *Browsky* v. *Perdue,* 105 W. Va. 527, 143 S. E. 304; *Ex Parte Hickey,* 93 W. Va. 411, 116 S. E. 765; *Ex Parte Page,* 77 W. Va. 467, 87 S. E. 849; *Ex Parte Mooney,* 26 W. Va. 36, 53 Am. Rep. 59. In *Slater* v. *Melton,* 119 W. Va. 259, 193 S. E. 185, we held: "3. Where jurisdiction of a court of limited jurisdiction has been properly established, either by the recital in the record of the necessary jurisdictional facts, or by the aid of a presumption in favor of jurisdiction established by statute, its orders cannot be revised or altered by habeas corpus, and this applies to courts having juvenile jurisdiction under Chapter 49 of the Code. Habeas corpus cannot be used as a substitute for a writ of error or certiorari."

We think it can not be seriously questioned that the Juvenile Court of Raleigh County obtained jurisdiction of the particular charge against the infant by virtue of the petition mentioned. See *State ex rel. McGilton* v. *Adams, Warden,* 143 W. Va. 325, 102 S. E. 2d 145. Though no summons or written notice of the time of the hearing was served on the infant, or the father or mother of the infant, the infant was, at the time, in legal custody, and the father and mother of the infant had actual notice, and all were present during the hearing. See *State ex rel. Hinkle* v. *Skeen, Warden, supra.* In these circumstances, and in light of the holdings mentioned,

there exists no basis for saying that the Juvenile Court of Raleigh County did not have jurisdiction of the subject matter of the particular proceeding, or of the person of the juvenile. Complaint is made as to certain matters relating to the procedure or trial of the case, such as the informal manner of the receiving of evidence of guilt, the lack of an investigation and report of the probation officer, and the failure of the court to advise the father of his appointment as guardian ad litem before the hearing. Clearly, however, such matters do not go to the question of jurisdiction of the court, or establish that the court exceeded its jurisdiction, either constitutionally or statutorily, and, therefore, are not reachable in a proceeding in habeas corpus.

Complaint is also made as to the failure of the court to appoint counsel for the infant. The question raised is, we think, sufficiently answered by the applicable provision of the statute quoted above. No request for counsel, having been made by the interested parties then present, the court was not required to appoint counsel. Moreover, there was not only ample opportunity afforded for the making of a request for counsel,but ample opportunity, so far as the record discloses, for the actual employment of counsel, if the interested parties had been so advised.

The contention is made that since the petition charged that the telephone call was made on the 9th of February, 1959, and the stipulation establishes that the disturbance of the schools did not occur until the morning of the following day, the criminal offense on which the charge of disturbance was based was different from the offense proved. We think there is no substantial merit in the contention. The stipulation definitely establishes that the schools were disturbed as a result of the telephone call and that the call was made by the infant, thus, the initial act which set in motion the disturbance occurred on the ninth. The pertinent provision of the statute requires only that the petition set "forth the facts to the court or judge". Though the charge of delinquency is not a crimi-

nal charge, the facts, we think, need not be stated more fully or precisely than is required in an indictment or warrant charging the criminal violation. Ordinarily, in misdemeanor cases, at least, failure to allege the correct date of the commission of the offense, unless time is an essential element of the offense, or unless a statute of limitations is involved, is not fatal to the accusation. "* * * where time is not of the essence or gist of the offense, the precise time at which the offense is charged to have been committed is not material * * *". 27 Am. Jur., Indictments and Informations, Section 70. See 42 C.J.S., Indictments and Informations, Section 123. In *State* v. *Lewis,* 138 W. Va. 743, 77 S. E. 2d 606, the indictment charging the defendant with having committed grand larceny "on the _____ day of _____, 1953", was held sufficient as to time. In the opinion the Court quoted with approval from the opinion in *State* v. *Pennington,* 41 W. Va. 599, 23 S. E. 918, prepared by Judge Brannon, as follows: "* * * I would state the law to be that, where no statute of limitation bars, you may wholly omit the date of the offense from the indictment, unless it be one of the rare offenses where time enters into its essence; but, where there is a limitation, you must state date, so it appear the offense is not barred * * *". See *State* v. *Varner,* 131 W. Va. 459, 48 S. E. 2d 171; *State* v. *Crummitt,* 129 W. Va. 366, 40 S. E. 2d 852; *State* v. *Davis,* 68 W. Va. 184, 69 S. E. 644; *State* v. *Thompson,* 26 W. Va. 149. In referring to the rule applied in criminal cases, as an answer to the question raised, we are not implying that rules of procedure usually applied in the trial of criminal cases should always be applied in hearings involving charges of juvenile delinquency, where, perhaps, the proceedings are intended to be more informal, stripped of certain technicalities. We are simply saying that the procedure followed in the instant case deprived the juvenile of no constitutional or other right which rendered the sentence imposed on him void, so as to be reachable in a habeas corpus proceeding.

The writ issued was discharged and custody of the

juvenile was remanded to respondent, by the order above mentioned.

*Writ discharged.*