294 A.2d 206.

FRANK GONSALVES, JR. *vs.* JOSEPH DEVINE, *Superintendent Rhode Island Training School for Boys.*

AUGUST 17, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. On March 26, 1970, Frank Gonsalves, Jr., then a minor of 16 years, appeared in the Family Court to answer a petition charging him with making "a physical assault on [a] teacher at Central Junior High School." A Family Court justice found him to be a wayward child and ordered him committed to the custody of the Rhode Island Training School until further order of the court. Gonsalves thereupon petitioned this court for a writ of habeas corpus alleging that his constitutional rights had been violated in the proceedings which resulted in his detention at the training school. We articulated that petition as if it were an appeal from the Family Court adjudication, and we ordered the parties to submit briefs as provided for under our rules. (Unpublished order, entered August 4, 1970).[1]

We begin with a statement of the facts. Because the record transmitted here by the Family Court clerk is in-

---

[1]In our order we inadvertently said that we were "[t]reating the petition for a writ of habeas corpus as a bill of exceptions in a criminal matter." We acknowledge our error and treat that petition, *nunc pro tunc*, as if it were a duly and properly filed claim of appeal.

complete and in disarray we derive our information not only from that record, but also from the uncontradicted assertions contained in Gonsalves' petitions for writs of habeas corpus here and in the Family Court, in the state's answer to the petition in this court, and in the briefs filed here by the parties.

Those sources disclose that Gonsalves appeared in the Family Court together with three other juveniles who also were charged with the same assault. Each was accompanied by his mother. While nothing before us indicates whether Gonsalves' appearance was in response to a summons, apparently one had issued in normal course following the court's receipt of a petition dated March 19, 1970, in which a state social worker relates the alleged "physical assault."

In any event, summons or no, Gonsalves, together with the three other juveniles, was present in the Family Court on the morning of March 26, 1970. Although the four cases were consolidated for hearing, the juveniles were separately advised by the trial justice that each was charged by the school department with having made a "physical assault" upon a teacher at Central Junior High School on March 3, 1970; and the mother of each was advised that she was entitled to have an attorney defend her son and was asked whether she desired one. Each mother responded negatively. The trial justice then asked each of the four juveniles whether the facts as to him were true. Each answered "yes."[2]

---

[2]The full exchange between the trial justice and Gonsalves with respect to the "entry of a plea" and his right to be represented by an attorney follows:

"The Court:    Now, we come to Frank Gonsalves. Frank you are charged here by the School Department of East Providence that you did, on the 3rd day of March 1970, make a physical assault on a teacher at Central Junior High School. I also inform you Mrs.

During these preliminary proceedings, the trial justice did not advise Mrs. Gonsalves that if she was unable to afford counsel, counsel would be appointed by the court to represent her child. Neither did he in any way tell Gonsalves that he could remain silent and refuse to answer whether the facts as to him were true or advise him of possible consequences of admitting their truth. Instead, he followed his inquiries about counsel and the truth of the facts by requesting a representative of the East Providence School Department to relate the nature of the complaints against the four boys. The response was that Gonsalves and two of the other juveniles followed the teacher as he was leaving the school cafeteria to return to his classroom, that the boys jostled him and made remarks which caused him to question their actions, that some pushing and shoving ensued, and that the fourth boy then appeared on the scene and assaulted the teacher. That account was confirmed by the school principal. Neither the principal nor the representative was sworn, and while the principal's recital was based in part on his own observations and in part on what the allegedly assaulted teacher had related to him, that of the representative was based solely upon what he had been told rather than upon what he had observed.[3]

---

|  |  |
|---|---|
|  | Gonsalves, that you are entitled to have an attorney defend your boy against this complaint if you so desire. |
| Mrs. Gonsalves: | No. |
| The Court: | You do not wish one? |
| Mrs. Gonsalves: | No. |
| The Court: | All right. Are these facts true as referring to you [Gonsalves]? |

* * *

| Frank Gonsalves: | Yes. |

* * *

| The Court: | All right. Now, what are the complaints?" |

[3]We do not decide, but certainly doubt, whether the facts presented establish the offense charged, inasmuch as an assault is defined in this state as "* * * any unlawful attempt or offer, with force or violence, to

At no point during the inquiry into the facts of the alleged assault did the trial justice offer the juveniles an opportunity to question the school department's representative or the principal, to present testimony in their own defense, to address the court in their own behalf, or to exercise what at common law was known as the right of allocution. Instead, the record shows only that the trial justice, at the conclusion of the principal's statement and after observing that "any striking of a teacher just cannot be tolerated in our system," ordered the four juveniles detained at the state training school until further order of the court.[4]

Following the pronouncement of judgment in each case the mothers of two of the boys requested permission to address the court. Permission was granted, but their attempts to explain their sons' actions were interrupted and cut off by the trial justice who said that he had afforded them a full opportunity to have counsel, that each of the four juveniles had "pleaded guilty" to the charge or charges against him, that he had given the juveniles and their mothers ample opportunity to say something during the hearing, that if they were dissatisfied with the procedures they could claim an appeal, and that he had ruled on the cases and was not going to discuss the matters any further.[5]

The issue for us is whether, on the facts as we have been

do a corporal hurt to another, whether from malice or wantonness. The offence may consist, also, in putting another in fear of violence." *State* v. *Baker*, 20 R. I. 275, 277, 38 A. 653, 654 (1897).

[4]While nothing in the transcript of the proceedings indicates the trial justice's finding in the Gonsalves case, the other records before us show that he was adjudicated a wayward child.

[5]His verbatim comments in part were:
"Yes, I have given you your opportunity, I have given everybody their opportunity here,—but—to have counsel, you all refused it, you all pleaded guilty to these charges and I have ruled on the case, that at this point if you wish to take an appeal from my ruling you are entitled to do the same, but I am not going to discuss this matter any further with you, I have ruled, that is it."

able to garner them, Gonsalves received the treatment which *In re Gault,* 387 U. S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) said is the just due of a juvenile at a proceeding where a determination is made of whether he is a "delinquent"[6] by reason of his alleged misconduct, and when he faces a curtailment of his freedom and commitment to a state institution. *Id.* at 13, 87 S.Ct. at 1436, 18 L.Ed.2d at 538. For Gonsalves that treatment included a hearing which should have measured up to "the essentials of due process and fair treatment," *id.* at 30, 87 S.Ct. at 1445, 18 L.Ed.2d at 548; a prior written notice of the specific charges against him received far enough in advance of the scheduled court hearing to afford a reasonable opportunity for preparation, *id.* at 33-34, 87 S.Ct. at 1446-47, 18 L.Ed.2d at 549-50; the right to be represented at that hearing by retained or appointed counsel, *id.* at 34-42, 87 S.Ct. at 1447-51, 18 L.Ed.2d at 550-54; *In re Holley,* 107 R. I. 615, 621-22, 268 A.2d 723, 727 (1970); the right, in the absence of a valid confession, to be confronted by sworn witnesses and to be afforded an ample opportunity to subject them to cross-examination, *In re Gault, supra* at 57, 87 S.Ct. at 1459, 18 L.Ed.2d at 562-63; and strict observance of the privilege against self-incrimination, *id.* at 47-50, 87 S.Ct. at 1454-56, 18 L.Ed.2d at 557-59. A post-*Gault* addition to the foregoing is the requirement that the case against a juvenile must be proved beyond a reasonable doubt. *In re*

---

[6]*In re Gault, supra,* was concerned with an Arizona juvenile, and the statutory definition of a "delinquent child" in that state includes "[a] child who has violated a law of the state or an ordinance or regulation of a political subdivision thereof." *Id.* at 9, n. 6, 87 S.Ct. at 1434, 18 L.Ed.2d at 536. In this state our definition of a "wayward child" under G. L. 1956 (1969 Reenactment) §14-1-3(G)(6) is, in pertinent part, substantially the same, and includes any child—

"Who has on any occasion violated any of the laws of the state or of the United States or any of the ordinances of cities and towns, other than ordinances relating to the operation of motor vehicles."

*Winship,* 397 U. S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *State* v. *Turner,* 107 R. I. 518, 268 A.2d 732 (1970).[7]

Clearly, Gonsalves was denied some of the "essentials of due process and fair treatment." Indeed, a study of the available records creates substantial doubts as to whether the trial justice gave more than token recognition to any of those essentials. Here, however, we discuss, not all the *Gault* requirements, but only whether Gonsalves was denied the effective right to counsel. Our failure to concern ourselves with whether or not his other rights were observed does not mean that the need to heed them was any less essential, or that the denial of his right to be represented by counsel was a more flagrant breach than was the nonobservance of the other *Gault* requirements. Instead, we fasten to it because of the unlikelihood that the other *Gault* essentials would have been denied if Gonsalves and his mother had been clearly and properly advised of his right to be represented by counsel and had they taken advantage of that right.

To what extent then was Gonsalves entitled to be effectively represented by counsel and how should he have been advised of his right to that representation? *Gault* does not go as far as *Powell* v. *Alabama,* 287 U. S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) and say that he, no less than an adult, "require[d] the guiding hand of counsel at every step in the proceedings against him." *Id.* at 69, 53 S.Ct. at 64, 77 L.Ed. at 170. It does, however, say:

> " * * * that the Dues Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified

---

[7]The United States Supreme Court has held, however, that "* * * trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." *McKeiver* v. *Pennsylvania,* 403 U. S. 528, 545, 91 S.Ct. 1976, 1986, 29 L.Ed.2d 647, 661 (1971).

of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." 387 U. S. at 41, 87 S.Ct. at 1451, 18 L.Ed.2d at 554.

The state, while conceding that Gonsalves was entitled to representation, nonetheless argues that both he and his mother were fully advised of their right in this respect by a probation counselor prior to the Family Court hearing,[8] and that they waived it when they appeared at the Family Court hearing unaccompanied by retained counsel and made no request for the appointment of counsel.

We cannot agree that the probation counselor's advice, even when coupled with what the trial justice said to Mrs. Gonsalves about her right "to have an attorney defend [her] boy" (see n. 2), relieved the trial justice of his obligation to tell both mother and son of the child's right to be represented by either retained or appointed counsel. This is what *Gault* says was his duty.

In *Gault* the mother knew that she could have appeared with counsel at the juvenile hearing, but that knowledge, the Court said, was not a waiver of the child's right to counsel. Instead, the mother and the child

"* * * had a right expressly to be advised that they might retain counsel and to be confronted with the need for specific consideration of whether they did or

---

[8]The supporting evidence for the state's argument comes from the record of a Family Court habeas corpus proceeding instituted by Gonsalves subsequent to the adjudicatory hearing, but prior to the institution of habeas corpus proceedings in this court. At that proceeding the probation counselor who had investigated the alleged assault on the teacher testified that he met with Gonsalves and his mother on or about March 17, 1970; that he read the complaint to them; that he advised Gonsalves that he had the constitutional right not to answer any questions pertaining to the complaint; and that he told both Gonsalves and his mother that "* * * he is entitled to have a lawyer represent him and it is their choice if they want a lawyer, they do not have to, but if they cannot afford a lawyer at the Court hearing, the Judge that is hearing the case will provide them at that time with the Public Defender * * *."

'did not choose to waive the right. If they were unable to afford to employ counsel, they were entitled in view of the seriousness of the charge and the potential commitment, to appointed counsel, unless they chose waiver. Mrs. Gault's knowledge that she could employ counsel was not an 'intentional relinquishment or abandonment' of a fully known right." 387 U. S. at 42, 87 S.Ct. at 1451, 18 L.Ed.2d at 554.

What took place here does not differ from what occurred in *Gault*, and the trial justice here, as did the trial justice in *Gault*, erred by failing specifically and with particularity to advise mother and child of their right to counsel as that right is defined in *In re Gault, supra*.

The appeal is sustained, and the cause is remanded to the Family Court for such further proceedings consistent with this opinion as may be appropriate.

*John T. Walsh, Jr., Higgins & Slattery, V. Paul McGinn,* Rhode Island Legal Services, Inc., for petitioner.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for respondent.