STATE *ex rel.* MAMIE LOU WILSON

*v.*

BETTY LOU BAMBRICK, *Superintendent, West Virginia Industrial Home for Girls, etc.*

(No. 13307)

Submitted April 24, 1973.　　　　Decided May 29, 1973.

*James R. Gerchow, Paul Raymond Stone,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *E. Leslie Hoffman, III,* Assistant Attorney General, for respondent.

BERRY, PRESIDENT:

The petitioner, Mamie Lou Wilson, a juvenile, filed a petition with exhibits attached thereto for a writ of habeas corpus ad subjiciendum in this Court on December 11, 1972 alleging that she was being unlawfully incarcerated by the respondent, Betty Lou Bambrick,

Superintendent of the West Virginia Home for Girls at Salem, West Virginia. Petitioner contends a number of her constitutional rights were violated during the proceedings which led to her incarceration. A writ was issued by this Court on December 18, 1972 returnable January 10, 1973 and the case was continued until April 24, 1973 at which time it was submitted for decision upon the argument and brief on behalf of the petitioner.

The respondent filed an answer and return admitting that the petitioner had been denied counsel at her delinquency hearing and confessed error. Counsel for the petitioner filed an additional motion asking that the writ be awarded but that temporary custody of the petitioner be extended with the West Virginia Department of Welfare for a period not to exceed 180 days, or that the issuance of the writ be stayed not to exceed 180 days.

It appears from the petition that on or about June 1, 1972 the petitioner, then fifteen years of age, ran away from her home in Winfield, Putnam County, West Virginia. On June 3, 1972 the petitioner's mother, Mrs. Ernest Litton, secured a criminal warrant from a justice of the peace for the arrest of her daughter as a "runaway child". The petitioner was subsequently taken into custody by the Wheeling Police Department on June 7, 1972 and was detained in the juvenile section of the jail until June 9, 1972 when petitioner's mother and stepfather drove to Wheeling to return petitioner to Winfield.

On the return trip to Winfield, petitioner's mother informed petitioner that she was going to send her to the West Virginia Industrial Home for Girls in Salem. Upon their arrival in Winfield, petitioner was taken to the Putnam County Sheriff's office. The sheriff contacted Miss Joyce Bailey who was the child welfare worker for the Department of Welfare. Miss Bailey was unable to negotiate an acceptable solution so the sheriff contacted the Judge of the Juvenile Court of Putnam County who directed that the petitioner be temporarily detained in

the juvenile section of the Mason County jail since the Putnam County jail was undergoing repairs.

On June 12, 1972 the petitioner appeared before the Juvenile Court of Putnam County for a detention hearing. Present at this hearing were the Judge of the Juvenile Court, the court reporter, the welfare worker, Miss Bailey, the petitioner's mother and stepfather and the petitioner. As a result of this hearing, the Court entered an order that the petitioner be detained in the juvenile detention section of the Putnam County jail and awarded temporary custody of the petitioner to the Department of Welfare. Another hearing was set for June 21, 1972, but the petitioner was not informed of this hearing until June 19, 1972. At the hearing petitioner was given the choice of either returning home with her parents or going to the West Virginia Industrial Home for Girls. The petitioner decided to go to the Industrial Home.

The petitioner was not advised of her right to counsel at either the June 12th hearing or the June 21st hearing. On June 23, 1972 an order was entered committing the petitioner to the West Virginia Industrial Home for Girls until "paroled or discharged". Petitioner was then returned to the juvenile detention section of the Mason County jail where she remained until June 30, 1972 at which time she was transported to the Industrial Home for Girls in Salem, West Virginia.

There is no question that under the present statute and the latest decisions of the Supreme Court of the United States and this Court the petitioner must be informed that she has the right to be represented by counsel and that counsel will be appointed to represent her if she can not afford an attorney. Code, 49-5-13, as amended. *In Re Gault,* 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527. See *State v. McArdle,* 156 W.Va. 409, 194 S.E.2d 174. The holding in the case of *State ex rel. Toney v. Mills,* 144 W.Va. 257, 107 S.E.2d 772, decided in 1959, has been superseded by the statute, Code, 49-5-13, as amended,

passed in 1968, and the decision in the case of *In Re Gault, supra.*

The respondent admits the petitioner's right to counsel and confessed error as to this matter in the return and answer. However, there were also many other rights to which the petitioner was entitled which were denied her in this proceeding. As set forth in the case of *In Re Gault, supra,* a juvenile has the following constitutional rights: to be given timely notice of the charges against him; to have a proper hearing and to confront and cross-examine adverse witnesses absent a valid confession; and to be meaningfully informed of his privilege against self-incrimination. However, it is not necessary for the disposition of this case to discuss these other matters relating to due process of law under the Fourteenth Amendment to the Constitution of the United States referred to in the authorities referred to above, although we do not mean to infer that they are any less essential than the right to have counsel in such proceedings. These rights would no doubt have been afforded to the petitioner if she had been represented by counsel and properly advised. See *Gonsalves v. Devine,* _____ R.I. _____, 294 A.2d 206.

The petitioner's motion to have the custody of the petitioner extended with the West Virginia Department of Welfare for a period of 180 days, or the issuance of the writ stayed not to exceed 180 days, is not well taken. The writ was issued after the habeas corpus petition was filed in this Court and the matter was set for hearing. In a habeas corpus proceeding after the writ is granted and hearing held the petitioner is either remanded to the custody of the respondent or released from custody. If the West Virginia Department of Welfare is interested in obtaining custody of the petitioner in this case it may file a petition in the Juvenile Court of Putnam County which has original jurisdiction in such proceedings. Under the provisions of Chapter 49, Code 1931, as amended, juvenile courts are given broad jurisdictional powers in

relation to children which the Supreme Court of Appeals can only review on appeal of a case from the juvenile courts. This Court does not conduct hearings in such cases. See *State ex rel. Acton v. Flowers*, 154 W.Va. 209, 174 S.E.2d 742. Therefore, the petitioner's motion is denied.

For the reasons stated herein, the prayer of the petitioner is granted and she is released from custody of the respondent.

*Petitioner released from custody.*