STATE OF WEST VIRGINIA

*ex rel.* CHARLES JOSEPH GRAVES

*v.*

HONORABLE D. B. DAUGHERTY,

*Judge of The Circuit Court
of Cabell County, West Virginia*

(No. 14517)

STATE OF WEST VIRGINIA

*ex rel.* RANDY GUE

*v.*

HONORABLE RUSSELL C. DUNBAR,

*Judge of The Circuit Court
of Cabell County, West Virginia*

(No. 14518)

Decided May 13, 1980.

*John C. Purbaugh, W. Va. Legal Services Plan, Heidi Weintraub, W. Va. Legal Services Plan,* for relators.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey, Lawrence R. Frail,* Assistant Attorneys General, for respondents.

HARSHBARGER, JUSTICE:

In these consolidated cases, we decide whether an indigent defendant in a paternity action is entitled to appointed counsel, and whether he can be denied a blood grouping of himself, the child's mother and the child because he is unable to pay for the tests.

## I.
## NO. 14517

On April 16, 1974, Donna Gosnay obtained a warrant charging Charles Joseph Graves with fathering her illegitimate child. Graves was arrested on December 30, 1974. He stated in a deposition taken August 3, 1979, that he could not recall whether he was ever incarcerated on the charge, but a notation on the warrant reflects that he was jailed in default of a $500 bond.

On February 9, 1979, Graves was arraigned on the 1974 warrant and pled guilty without benefit of counsel. He had not attempted to obtain an attorney. During the proceedings there was disagreement about visitation rights with the child, and he was given time to obtain counsel. The court denied his motion for court-appointed counsel because "a paternity suit is in the nature of a civil proceeding." Graves had previously filed an affidavit of indigency and is represented here by the West Virginia Legal Services Plan.

W. Va. Code, 48-7-1 *et seq.*, concerns "Maintenance of Illegitimate Children." A warrant for a defendant in a

paternity proceeding is obtained by a complainant mother who gives information for the warrant to a magistrate. The alleged father is then arrested and required to post bond for not less than five hundred nor more than one thousand dollars to guarantee his appearance. If an accused is financially unable to post the bond, he is committed to jail. The action may be brought in the woman's name or in the name of the county court (now county commission) and, "[t]he prosecuting attorney for the county shall appear on behalf of the woman or of the county court in every case under this article...." Code, 48-7-7. The cases are tried in circuit court, before a jury if the defendant pleads not guilty and does not waive a jury trial. If he is found guilty, he is ordered to pay "for the maintenance, education, and support of the child until such child shall attain the age of eighteen years, and all reasonable medical expenses incidental to the birth of the child...." Code, 48-7-4. The court must secure a performance bond or in the alternative, order him to jail until bond is posted or until the woman and the court consent to his discharge, or the court determines that he is unable to pay.

There is no statutory authority for appointment of counsel for a defendant in a paternity proceeding.

"No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. Va. Const. art. III, §10. It is fundamental to our constitutional structure that parties will be treated fairly by government and courts. Due process begins with notice and an opportunity to be heard. "Notice contemplates meaningful notice which affords an opportunity to prepare a defense and to be heard upon the merits." *State ex rel. Hawks v. Lazaro*, 157 W.Va. 417, 202 S.E.2d 109, 124 (1974).

The opportunity to be heard must be equally meaningful. Justice Sutherland, writing for the U.S. Supreme Court in 1932, articulated part of the due process hearing requirements:

What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . If in any case, *civil or criminal,* a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

> *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) (emphasis added).

*Powell* held that due process required appointment of counsel to indigent defendants in capital cases.

In 1963 the same Court unanimously held that indigents charged with any felony have a due process right to appointed counsel:

[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. This seems to us an obvious truth. Governments, both state and federal, quite properly spend vast sums of money to establish machinery to try defendants accused of crime. Lawyers to prosecute are everywhere deemed essential to protect the public's interest in an orderly society. Similarly, there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses. That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief

that lawyers in criminal courts are necessities, not luxuries .... From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him ....

> *Gideon v. Wainwright,*
> 372 U.S. 335, 344,
> 83 S.Ct. 792, 796-797, 9
> L.Ed.2d 799 (1963).

The due process right to counsel was again expanded by the Supreme Court in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (right to counsel applies to juveniles in "civil" delinquency cases), and *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (right to court-appointed counsel in trials for petty offenses and misdemeanors that may result in defendants' imprisonment).

We must afford every protection that is required by federal due process decisions and must provide additional safeguards if required by our state constitution. *Oregon v. Haas,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *State ex rel. Dowdy v. Robinson,* ____ W.Va. ____, 257 S.E.2d 167 (1979). Due process "is a continuously evolving concept ... [it] represents the most advanced mechanisms for fairness which juridical science can create. . . ." *State ex rel. Hawks v. Lazaro, supra* 202 S.E.2d, at 117. Our state constitutional due process right to counsel requires court-appointed attorneys in criminal and civil actions which may constrain one's liberty or important personal rights. *Hawks, supra* (right to court-appointed counsel in involuntary civil mental health commitment proceedings); *Eastern Associated Coal Corp. v. Doe,* ____ W.Va. ____, 220 S.E.2d 672 (1975) (right to court-appointed counsel in civil and criminal contempts); *Bullett v. Staggs,* ____ W.Va. ____, 250 S.E.2d 38 (1978) (court-appointed counsel for violation of municipal ordi-

nances); *State ex rel. Lemaster v. Oakley,* 157 W.Va. 590, 203 S.E.2d 140 (1974) (court-appointed counsel for indigent parents in civil child neglect proceedings); *Wilson v. Bambrick,* 156 W.Va. 703, 195 S.E.2d 721 (1973) (court-appointed counsel for civil juvenile proceedings). *See* Note, The Indigent's Right to Counsel In Civil Cases, 76 Yale L. J. 545 (1967). We eschew the rubric of "criminal" versus "civil" in determining what process is fair. The characteristics and ramifications of a proceeding, rather than its label, spawn due process requirements.

Criminal prosecutions are characterized by the sovereign's use of resources and expertise to deprive citizens of liberty, property, and reputation interests. They carry the right to trial by jury.

All these factors are present in paternity prosecutions. The putative father is arrested by authority of a warrant and brought before a magistrate. He is required to post a bond to guarantee his appearance at trial and may be imprisoned if he does not make that bond. *But see, Kolvek v. Napple,* ____ W.Va. ____, 212 S.E.2d 614 (1975). The action is prosecuted by a county prosecutor and can be brought in the name of the county.[1] A defendant has an absolute right to trial by jury. If determined to be the father, a defendant is required to support and maintain his child until its majority, and if he does not, he can be jailed.

In *Eastern Associated Coal Corp. v. Doe, supra,* we held that where the penalty is not trivial as determined from the facts of the case, due process requires appointed counsel for indigents. It is not trivial to force a man to pay a fixed sum of money each month for up to eighteen years. And it is not trivial for a man to be subjected to sanctions, including indeterminate incarceration, if he fails to pay. *Floyd v. Watson,* ____ W.Va. ____, 254 S.E.2d 687 (1979). He is also subject to misdemeanor criminal prosecution for non-support, Code, 48-8-1 *et seq.*

---

[1] If the mother receives public welfare assistance, she must assign her action to the state which brings the suit in its sovereign capacity. Code, 9-3-4.

We have frequently held that the non-support statute must be read *in pari materia* with the paternity law. *State v. Bragg*, 152 W.Va. 372, 163 S.E.2d 685 (1968); *State ex rel. Worley v. Lavender*, 147 W.Va. 803, 131 S.E.2d 752 (1963). Paternity, as an element of the crime of non-support, must be proved beyond a reasonable doubt. *State v. Clay*, ___ W.Va. ___, 236 S.E.2d 230 (1977).

The results of a finding of paternity are often more severe than ones that attend violations of criminal laws, municipal ordinances or civil contempts, for the defense of which counsel must be provided to indigents. *Bullett v. Staggs, supra; Eastern Associated Coal Corp. v. Doe, supra.* "Serious consequences ensue upon the fixing of paternity of an illegitimate child upon a citizen. It affects his liberty, his estate and his earnings."[2] *State ex rel. Wright v. Bennett*, 90 W.Va. 477, 480, 111 S.E. 146 (1922). The greater the rights infringed by governmental action, the more the due process clause requires. *Waite v. Civil Service Commission*, ___ W.Va. ___, 241 S.E.2d 164 (1977).

The significant liberty and property consequences of a paternity determination require utmost due process protection. The state comes well represented by attorneys when it hauls a putative father into court; fairness and justice demand that he be provided court-appointed counsel if he is indigent.

> Among the clearest cases of injustice in the civil process are those in which the state brings suit against an indigent and unrepresented defendant . . . . Note, The Indigent's Right to Counsel in Civil Cases, 76 Yale Law Journal 545, 556 (1967).

---

[2] The consequences of paternity continue after the father's death because an illegitimate child is entitled to an intestate share of his father's estate. *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

As we said in *State ex rel. Lemaster v. Oakley, supra* 203 S.E.2d, at 144:

> The contrast between the unrepresented parents' [or defendant's] innocence of legal knowledge and the State, armed, as it is, with its fiscal resources, expertise in child custody [or paternity] matters, and the services of a salaried prosecuting attorney, is striking and dramatic.

*Lemaster* recognized that even though a civil child neglect proceeding does not fall within the typical class of criminal actions for which court-appointed counsel is required, the nature of the parent-child relationship and the severe potential for its alteration by those proceedings requires that indigent parents be afforded the right to court-appointed counsel. The establishment of a parent-child relationship is no less serious than the termination of one.

Other jurisdictions have held that indigent defendants are entitled to court-appointed counsel in paternity actions. *Reynolds v. Kimmons,* ___ Alaska ___, 569 P.2d 799 (1977); *Salas v. Cortez,* 24 Cal.3d 22, 154 Cal. Rptr. 529, 593 P.2d 226 (1979) (in bank), *cert. denied,* 100 S.Ct. 209 (1979); *Artibee v. Cheboygan Circuit Judge,* 397 Mich. 54, 243 N.W.2d 248 (1976); *Hepfel v. Bashaw,* ___ Minn. ___, 279 N.W.2d 342 (1979); and *M. v. S.,* 169 N.J. Super. 209, 404 A.2d 653 (1979). We agree with the California court's comments:

> Unless the rights of indigent paternity defendants are protected, courts risk finding not the right man, but simply the poorest man to be the father of a child. If paternity is to be determined in an adversary proceeding at the behest of the state, surely the interests of all concerned demand that the defendant be able to defend fully and fairly. He cannot do so when his indigency prevents him from obtaining counsel. *Salas v. Cortez, supra,* 154 Cal. Rptr. at 535, 593 P.2d at 232.

Mandamus will issue to require appointment of counsel for Mr. Graves.

## II.
## NO. 14518

Randy Gue is defendant in a paternity action brought on behalf of Marsha Keesee. He pled not guilty, and through his counsel filed a motion requesting that blood grouping tests be performed and that the state pay for the tests because he was indigent. The trial court granted the motion for blood tests but held that Gue would have to pay for them. This proceeding was filed on his behalf by the West Virginia Legal Services Plan.

Gue contends that his rights to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Section 10 of our Constitution are violated by the circuit court's ruling, because it requires him to proceed to trial without benefit of evidence that may be exculpatory.

Statutory authorization for the right of an alleged father to blood grouping tests is in Code, 48-7-8:

> The court, or judge thereof in vacation, on motion of the defendant, if seasonably made, shall order the mother, her child and the defendant to submit to one or more blood grouping tests by a person duly qualified to make such tests to determine whether or not the defendant can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion is established. The cost and expense of making such tests shall be borne by the defendant.

Other state courts with similar statutes have decided whether defendants involved in paternity actions who are unable to pay for the tests themselves are entitled to administration of the tests at state expense. In *Franklin v. District Court*, 571 P.2d 1072 (1977) the court ordered that blood grouping tests for an indigent be made at county expense. *See also People v. Doherty*, 261 App. Div. 86, 24 N.Y.S.2d 821 (1941) and *Walker v. Stokes*, 45 Ohio App.2d 275, 344 N.E.2d 159 (1975). These courts held that when a state grants the right to blood tests to

a paternity defendant, that right cannot be made dependent upon his financial resources. Otherwise he is denied the benefits of the Equal Protection Clause of the Fourteenth Amendment. Because of the criminal elements attached to paternity proceedings, because blood tests are an important part of the defense against allegations of paternity,[3] because the language of our statute is mandatory, and because the defendant's ability to pay for the blood tests bears no rational relationship to his guilt or innocence, a defendant is entitled to administration of the tests even though he is unable to pay the required costs. *See, Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

Our finding here that indigent paternity defendants are entitled to appointed counsel and blood tests at the expense of the State make Code, 51-11-8, applicable:

> In each case in which an attorney is assigned under the provisions of this article to perform legal services for a needy person, he shall be compensated for actual and necessary services rendered .... Expenses of the attorney in rendering such services, including, but not limited to, *necessary expenses for travel, transcripts, investigative services and expert witnesses, shall be reimbursed* .... (Emphasis supplied.)

The expense of blood grouping tests is a necessary expense to be borne by the State.

The writs of prohibition/mandamus prayed for in these cases are awarded.

*Writs granted.*

---

[3] "It has been estimated that with the aid of blood grouping tests, based upon each of the three blood-type classifications, A-B-O, M-N, and Rh-hr, a man falsely accused has a 55% chance of proving his non-paternity. Keefe and Farley, *A Trial of Bastardy is a Trial of the Blood,* 34 Cornell L.Q. 72 (1948); *accord, State v. Fowler,* 277 N.C. 305, 177 S.E.2d 385 (1970)." *Franklin v. District Court,* ___ Colo. ___, 571 P.2d 1072 (1977).