# CHARLESTON.

HEBB *v.* COUNTY COURT OF TUCKER COUNTY *et al.*

Decided November 24, 1900.

1. CONTEMPT—*What Constitutes.*

   Disobedience of an order of court entered in the absence of jurisdiction of the subject matter cannot be punished as contempt of court. (p. 281).

2. CONTEMPT—*Rights of Party Charged.*

   Where a party to a suit is charged with contempt of court, an opportunity should be afforded him to purge himself of the contempt by his own affidavit. (p. 282).

3. CONTEMPT—*Power of Courts—How Limited.*

   A court is not limited to fine and imprisonment in enforcing obedience to its orders, but it has control over its own proceedings, and can refuse the benefit of them to a party in contempt when asked as a favor, and can prevent him from taking any aggressive proceedings against his adversary; but it has no power to stay him in his proceedings by motion or appeal, where the object is to rid himself of the alleged contempt, or show that the order which he did not obey was erroneous. (p. 282).

Error to Circuit Court, Tucker County.

Application of Charles M. Hebb for a writ of *mandamus* against the county court of Tucker County and William M. Cayton. From an order granted therein, Cayton brings error.

*Affirmed by divided court.*

C. O. STRIEBY and C. WOOD DAILEY, for plaintiff in error.

W. G. CONLEY, DAYTON & DAYTON, and F. O. BLUE, for defendant in error.

ENGLISH, JUDGE:

This cause was before this Court on a former writ of error, and an opinion handed down therein on the 10th of December, 1898, reported in 45 W. Va. 578, BRANNON, PRESIDENT, delivering the opinion of the Court and stating therein the facts.

It appears that C. M. Hebb and W. M. Cayton were opposing candidates for the office of clerk of the county court of Tucker County at the election held in November, 1896, and that Hebb demanded a recount of the ballot. Cayton had been such clerk during the term immediately preceding said election. A recount was refused and Hebb obtained from the circuit judge a *mandamus* to compel such recount, and Cayton obtained said writ of error, on the hearing of which the judgment of the circuit court was affirmed, with directions to the circuit court to award another writ of *mandamus,* should Hebb ask it.

A peremptory *mandamus* was awarded by the circuit court on the motion of said Hebb, against the county court of Tucker, and W. H. Dasher, A. B. Flanagan and A. L. Helmick, commissioners composing the same, commanding them to assemble at the court house of Tucker County on March 20, 1899, in their corporate capacity as such county court and board of canvassers, and to then and there recount all ballots cast at said election in 1896, for the plaintiff Hebb and the defendant Cayton for said office of county clerk.

Now it seems that the original writ of *mandamus* in this case was applied for and obtained by Hebb on the alleged ground that the board of canvassers had refused to recount the votes cast at said election for clerk of the county court, and at the time such recount was refused, W. H. Dasher, Lewis Phillips,

and J. W. Campbell· constituted the board of canvassers. At the date of the return of the mandate of this Court to the circuit court of Tucker County the personnel of the canvassing board had changed, and W. H. Dasher, A. B. Flanagan, and A. L. Helmick then composed said board, and yet on said Hebb's motion, the circuit court of Tucker awarded a peremptory *mandamus* against these new members, commanding them to assemble and recount said ballots without giving him an opportunity to show cause why such writ should not issue against them, and without the fact in any way appearing that said Flanangan or Helmick had ever refused to recount said ballots.

The plaintiff in error sought by petition to raise these questions after the mandate of this Court had been returned, but the court refused to allow his petition to be filed and refused to consider it on the ground that it had been suggested that he was in contempt of the court in having qualified as clerk of the court, in disobedience to the order of the court, and for that reason was not entitled to be heard. In considering this question, let us inquire first whether he was in contempt. Had the circuit court any jurisdiction or right to make such order?

It appears that the ballots had been counted and Cayton had received a certificate of his election. The Code, chapter 10, section 7, provides that every person elected or appointed to an office in this State shall take the oath prescribed by the 5th section of the 4th article of the Constitution; and if bond be required of him by law, give his official bond, unless otherwise specially provided, within sixty days after he has been duly declared elected, etc. And section 10 of the same chapter provides that "if any person elected or appointed to an office fail to qualify within the time prescribed by law, the office shall be deemed vacant." The fact that the circuit court had made an illegal and unauthorized order enjoining said Cayton from qualifying, would not have excused him, or prevented the vacancy from occurring in the office, and the fact that he did qualify would in no manner affect the status, if upon a recount Hebb was found to have been elected and so declared, as the qualification of Cayton would have been treated as a nullity. Besides, Cayton having been the clerk for the term preceding, would, under the law, hold over until his successor was elected at any rate. In my view of the case then, the circuit court had no legal right to enjoin said Cayton from qualifying as such clerk, and thereby

jeopardize his right to the office should he be found on recount to have been elected. High, in his valuable work on Extraordinary Legal Remedies, 3rd Ed. sec. 49, p. 62, says: "Nor is it the proper function of the writ of *mandamus* to restrain one who claims title to a public office from qualifying as such officer, or from discharging the duties of his office." In this *mandamus* proceeding the circuit court did make an order restraining Cayton from qualifying as clerk, without giving him an opportunity to be heard. On this point the law is thus laid down in the Enc. of Plead. & Prac., vol. 4, p. 788, sec. 2, under the general head "contempt": "It is only a corollary upon the criminal or *quasi* criminal character of proceedings in contempt, that the party charged shall be accorded the inalienable privilege of being heard in his own defense."

In the case at bar, Cayton appears to have presented his petition duly sworn to, stating facts therein tending to purge himself of any contempt of the court; but the court refused to allow him to file the same. *In re Pitman,* 1 Curtis, 186 (U. S.) it is held that, "The character of the proceeding should not be lost sight of, and especially it should not be so varied as to deprive the party proceeded against of any substantial right. Now one of the most important privileges accorded by the law to one proceeded against, as for a contempt, is the right to purge himself by his own oath.

In the case of *Hovey* v. *Elliott,* 167 (U. S.) 469 it was held that "It is not within the power of the supreme court of the District of Columbia to order the answer of the defendant in a chancery suit pending in that court to be stricken from the files and a decree to be entered that the bill be taken *pro confesso* against him simply because he was held to be guilty of contempt in neglecting to pay into court money held by him which was the subject of controversy in the suit and declined to appear when summoned to do so. A court possessing plenary power to punish for contempt unlimited by statute has not the right to summon a defendant to answer and then after obtaining jurisdiction by the summons refuse to allow the party summoned to answer or strike his answer from the files, suppress the testimony in his favor, and condemn him without consideration thereof and without a hearing on the theory that he has been guilty of contempt."

In *Brown* v. *More,* 61 Cal. 432, it was held that, "No one can be punished for contempt for disobedience to a void order."

So also in *ex parte Rowe,* 7 Cal. 175, it was held that a commitment for contempt for refusing to obey an unlawful order of court can be reviewed and set aside by a supreme court.

Where the adjudication in contempt is erroneous an appeal will lie. 96 Ill. 68.

In *State ex rel Trudgeon* v. *Blair,* 39 W. Va. 704, this Court held that the disregard of a *supersedeas* improvidently issued and annulled and vacated for want of jurisdiction will not be punished as a contempt of the lawful process of the court.

In *Brinkley* v. *Brinkley,* 47 N. Y. 40, the court held that, "the supreme court is not limited to punishment by fine and imprisonment in enforcing obedience to its orders; but it has control over its own proceedings, and can refuse the benefit of them to a party in contempt when asked as a favor, and can prevent him from taking any aggressive proceedings against his adversary, but it has no power to stay him in his proceedings by motion or appeal where the object is to rid himself of the alleged contempt or show that the order which he did not obey was erroneous."

This is precisely what Cayton was seeking to do by his petition which is made a part of the record by the bill of exceptions, and yet the circuit court refused to allow the petition to be filed which action of the court in my opinion was erroneous.

For these reasons the judgment should be reversed.

*Affirmed by divided Court.*