# CHARLESTON.

## Morgan v. County Court.

Submitted March 18, 1903.    Decided April 25, 1903.

1. COUNTY COURT—*Mandamus—County Seat.*

     A writ of mandamus lies to compel a county court to convene and ascertain and declare the result of a vote upon the relocation of a county seat, where it has failed and refused to do so. (p. 374).

2. ELECTION—*Injunction.*

     An injunction does not lie to restrain ballot commissioners from putting on the ballots to be used at a general election the question of the relocation of a county seat, when the county court has made an order submitting such question to a vote. Such an injunction is null and void, and does not render invalid a vote upon such question. (p. 375).

3. ELECTION—*Injunction.*

     An injunction does not lie to restrain the holding of a public election authorized by law. (p. 376).

Error to Circuit Court, Wetzel County.

Action by B. L. Morgan and others against the County Court of Wetzel County. Judgment for defendant, and plaintiffs bring error.

*Reversed.*

B. L. BUTCHER, for plaintiffs in error.

T. P. JACOBS and E. B. SNODGRASS, for defendant in error.

BRANNON, JUDGE:

The county court of Wetzel County submitted to the voters at the general election in November, 1900, the question of the relocation of the county seat. Certain citizens and tax payers obtained an injunction against the ballot commissioners restraining them from putting on the ballots to be used at the election the question of the relocation of the county seat at Pine Grove, and they did not put the question on the ballots used at the general election. However, voters voted upon that question in hundreds of the ballots. At some of the precincts the commissioners of election made and returned along with the poll books and other papers of the general election separate certifi-

cates of the result of the election at those precincts upon the
county seat question, within the time fixed by law; but at a
number of precincts where votes were cast upon the question
the commissioners did not make out any certificates of the re-
sult upon that question, though they made a memorandum
of the result on the poll books and tally sheets. At the regular
meeting of the board of canvassers of the election to canvass
the returns as to public officers, the board did canvass the re-
turns as to the county seat question appearing on the certifi-
cates sent in from those precincts where such certificates were
made and sent in with the other returns, and ascertained and
declared that the result was for relocation of the county seat
44 votes, and against it 491 votes. Several weeks after the
election certain citizens procured said commissioners at the
precincts from which no certificates had been sent, to make
out and send to the clerk of the county court certificates of the
result of the election at those precincts upon the county seat
question, which were delivered to the clerk 3d April, 1901. At
the second regular term of the county court after the election,
in April, 1901, John Lavelle and others moved the county court
to file the said delayed certificates, and to summon the election
officers at the precincts to give evidence of the truth stated in
the certificates, and to account for the delay in making the
certificates, and consider the memoranda on the poll books
and the tally sheets in support of the certificates, and to consid-
er the memoranda made by the board of canvassers touching the
election, and from all such evidence to declare the result of
the election upon the county seat. The order of the county
court upon said motion shows that the court declined to con-
sider said delayed certificates, because they had been made
out since the adjournment of the canvassing board, and filed
since the regular January term, and because returned to the
clerk by private persons and not under seal, and the court de-
clined to summon the election officers, and declined to enter-
tain any and all said motions made by Lavelle and others, and
repeated that it declined to consider said delayed certificates
or evidence touching the election upon the county seat. It
refused to allow said delayed certificates to be filed. After this
acton of the county court B. L. Morgan and others obtained
from the circuit court an alternative *mandamus* commanding

the county court to convene in regular session and ascertain and declare the result of the vote at the election held in th county on November 6, 1900, "on the question of the relocation of the county seat in Pine Grove upon the separate certificates heretofore delivered by the election officers to the clerk of said court, and those delivered to the said clerk on the 3rd day of April, 1901, and to enter the result thereof of record as required by law, or show cause, if any it can, why it should not do so." The circuit court refused a peremptory *mandamus* and Morgan and others obtained a writ of error.

The first question is, does *mandamus* lie in the case, or is *certiorari* the proper remedy? It is useless to go over what has so often been discussed where *mandamus* does and does not lie, except in short space. Likely I could not state it better now than to repeat point 1 of the syllabus in *Roberts* v. *Paul,* 50 W. Va. 528: "The writ of *mandamus* properly lies where the inferior court refuses to take jurisdiction where by law it ought to do so, or where, having obtained jurisdiction in a cause, it refuses to proceed in the due exercise thereof; but it will not lie to correct alleged error occurring in the exercise of its jurisdictional discretion while acting within its jurisdiction." The inferior tribunal may be compelled to act, if it refuses to do so. *State* v. *County Court,* 33 W. Va. 589. We *may* not just say that the county court refused jurisdiction, but virtually so; it reached that result by refusing to go on to judgment. It declined to take up the evidence, to consider the certificates and other matters calling for decision in one way or the other; it refused to begin to consider a case plainly within its jurisdiction. This is virtually a renunciation or refusal of jurisdiction, because it refused it in an instance to those entitled to call for it in a matter of which it had jurisdiction. If it be not exact to say that the county court refused jurisdiction, we can say that "having obtained jurisdiction in a cause, it refused to proceed in the due exercise thereof." The motion was to declare the result of the election upon the relocation of the county seat, of course upon all returns, questioned and unquestioned. This the county court had never done. The action of the board of canvassers, which ascertained the result of the election certificates then before it did not operate in law, was a nullity, because the result of a vote

upon a county seat question must be declared by the county court, not by the board of canvassers. *Brown* v. *Board* and *Brown* v. *Randolph County Court,* 45 W. Va. 826, 827. The county court thus refused to perform a function required by statute of it, which it had not yet performed. *Certiorari* lies when the tribunal has performed its office for the correction of error. Here the county court declared no result on any of the returns.

But before we can award the *mandamus* we must see what is the effect of that injunction against the ballot commissioners. That was an injunction against holding any election upon the county seat question. Does injunction lie to stop an election for public officers? "Acts of public officers pertaining to the calling, conducting and certifying the results of elections, being the exercise of political functions of great importance, are rarely and reluctantly interfered with by court of equity, owing to the imperative necessity of protecting expressions of the popular will in the selection of officers and in other matters, and of having the result of such expressions accurately ascertained, numerous safeguards against fraud and abuse, and remedies for the correction of error and violations of duties, are usually provided by statute, so that the existence of means of redress by statutory proceeding usually afford ample ground for refusing equitable remedies. Accordingly, where an election is called in pursuance of a law authorizing it, a court of equity has no power to restrain the officers from holding, or the people from voting at such election; and they cannot be punished for disobeying an injunction issued in such a case, as the court has no jurisdiction to issue the writ. * * * And a court of equity is without power to restrain county commissioners from ordering an election for the removal of a county seat, where the statute providing a mode of contesting elections furnishes a remedy." 1 Spell. Inj. & Extra. Rem. section 630. Also section 721. "It has been held that the power of holding an election being a political power, equity has no jurisdiction to restrain officers intrusted by law with the duty of holding elections from the exercise of such power." 2 High Inj. sec. 1316. "If the court has no jurisdiction over the matter involved, or has exceeded its powers by granting an injunction in a matter beyond its jurisdiction, its injunction will be treat-

ed as absolutely void, the defendants cannot be punished for contempt for its violation. For example, when an injunction is issued against a board of township officers to restrain them from holding an election which they are authorized by law to hold, equity having no jurisdiction to interfere in such case, there can be no disobedience of the injunction and no attachment for contempt, since the mandate is absolutely void." High on Inj. section 1425. "The power to hold election is a political one, and a court of equity has no jurisdiction to enjoin the proper officer from holding an election. An injunction issued in such case is void, and gives no ground for attachment for contempt." 10 Am. & Eng. Ency. L . 817. Paine on Elections, section 940; McCrary on Elections, section 386. Kindred principles are stated in *Fleming* v. *Guthrie,* 32 W. Va. 1, and *Alderson* v. *Commissioners, Id.* 640. It cannot be thought that the people had not a right to vote upon the question, when an order of the county court made under authority of a statute gave them the right to vote. The injunction being void, there was no obligation to obey it. *State* v. *Blair,* 39 W. Va. 704; *Fleming* v. *Guthrie,* 32 W. Va. 1. We shall not decide whether the certificates are good or bad or any alleged irregularity touching them, or anything as to the result of the election, as these are matters within the jurisdiction of the county court, and it has not passed on these matters.

Therefore, we reverse the judgment of the circuit court and award a peremptory *mandamus* to the county court to convene and ascertain and declare the result of said election upon the question of the relocation of the county seat of Wetzel County at Pine Grove.

*Reversed.*