EASTERN ASSOCIATED COAL CORP.

*v.*

JOHN DOE, *an Individual, etc., et al.*

(NO. 13544)

Decided December 16, 1975.

---

202

*Darrell V. McGraw, Jr., David Grabill* for plaintiffs in error.

*Tutwiler, Crockett & LaCaria, Charles A. Tutwiler, Rose, Schmidt & Dixon, Daniel L. Stickler* for defendant in error.

NEELY, JUSTICE:

The Court granted this appeal to clarify the law of contempt in light of recent United States Supreme Court cases.[1] This appeal presents three substantial questions with regard to the law of contempt which have not been squarely addressed by this Court for many years. The first is the extent to which the alleged invalidity of a temporary injunction may be asserted as a defense in a contempt proceeding for violation of the injunction; the second is the distinction in this jurisdiction between civil and criminal contempt and the procedural requirements necessary for the successful prosecution of each respectively; and, the third is the distinction between trivial and serious criminal contempt and the implications of that distinction upon constitutionally mandated due process standards.

During February and March of 1974 numerous individuals, including appellants, apparently became dissatisfied with the so-called "quarter-tank rule" issued by the Governor of West Virginia for the purpose of conserving gasoline during the international oil embargo in effect at that time. The Governor's rule required that motorists have less than a quarter of a tank in reserve before buying gasoline. In an attempt to exert political pressure against the "quarter-tank rule" appellants and others picketed coal mines in Southern West Virginia. The picketers relied upon the well established tradition in the coal fields that miners will not cross picket lines of any kind. The picketing successfully interfered with the orderly operation of the appellee's coal mine.

The evidence discloses that immediately before the 12:01 a.m. shift of March 4, 1974, certain individuals established picket lines on the road leading to appellee's Keystone No. 1 Mine in McDowell County which caused

---

[1]*Bloom v. Illinois*, 391 U.S. 194 (1968); *Taylor v. Hayes*, 418 U.S. 488 (1974); and *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974).

appellee's employees to refuse to work. Appellee's supervisory employees were also denied access to the mine by the pickets who allegedly assaulted and struck one supervisory employee. Picketing was repeated again before the 8:00 a.m. shift on March 5, 1974, and again the mine shut down for refusal of miners to cross the picket lines.

As a result, appellee filed suit in the Circuit Court of McDowell County seeking to enjoin this picketing activity. On March 5, 1974, after an in-chambers hearing, a preliminary injunction was issued. At approximately 10:30 p.m. the same night, a deputy sheriff of McDowell County served copies of the preliminary injunction on appellants Ellis England, Gary Morgan, Thomas Craft, Lloyd Felts and Roger England. At the time of the service of process these men were engaged in picketing at the Keystone No. 1 Mine. These appellants continued their activities despite notice of the preliminary injunction, and their continued picketing once again resulted in the refusal of the miners to cross the picket line. On March 6, 1974, appellants William Stevenson, Jr. and Louis Pierce were personally served by the deputy sheriff.

All the appellants were observed near the entrance to the Keystone No. 1 Mine before the 4:00 p.m. shift on March 6, 1974, *after* they had all been served with the preliminary injunction. On March 8, 1974, the appellee moved for an order requiring appellants to show cause why they should not be held in contempt of court for violating the preliminary injunction. A show cause order was issued returnable March 12, 1974, but at appellants' request the hearing was continued until March 15, 1974.

At the hearing on the show cause order, appellee presented seven witnesses, all of whom identified one or more of the appellants as persons engaged in picketing after the issuance and service of the preliminary injunction. The only issues before the lower court at the show cause hearing were whether the appellants had been served with the preliminary injunction and whether they continued the prohibited activity after notice of the

existence of the injunction. The appellants were not represented by counsel, although they had had seven days after the issuance of the show cause order to retain counsel and to prepare their defense. At the hearing the circuit court judge advised the appellants of their right to counsel. A fair reading of the record, with particular regard to the knowledgeable way in which the appellants conducted themselves during the hearing, demonstrates that the appellants knowingly and voluntarily waived representation by counsel. *Johnson v. Zerbst,* 304 U.S. 458 (1938). The appellants did not deny any of the evidence offered by the appellee's witnesses, and while the appellants questioned the legal consequences of their activity, and maintained that they were engaged merely in the exercise of their First Amendment right to free speech, the evidence demonstrates that they were engaged in the activity commonly known as "picketing," with all of the economic consequences that implies—in particular, work stoppage.

Following the hearing the lower court imposed a monetary fine and jail terms on each of the appellants with the provision that they were to serve the jail term "until sooner released by this Court." One of the appellants was fined $500.00 and sentenced to the county jail for six months; the remaining six of the appellants were fined $250.00 and sentenced to the county jail for thirty days. The appellants were placed in the custody of the Sheriff of McDowell County, but released by the lower court that same day after the appellants agreed 1) to pay their fines within one hundred twenty days, 2) to cease and desist from coercing or preventing the employees of plaintiff or others from performing their work, and 3) to return to their own work at the first regular shift available to them.

I

The appellants argue that they were engaged in the exercise of constitutionally protected First Amendment rights and that the temporary injunction was improvi-

dently awarded because the court exceeded its legitimate powers in enjoining the exercise of free speech without a prior evidentiary hearing. Furthermore the appellants argue for the first time in this Court that they were not picketing but were merely protesting the "quarter-tank rule." The facts developed at the contempt hearing clearly demonstrate that the appellants were engaged in "picketing." The appellants allege that they were not given prior notice of the application for the injunction and for that reason the injunction is a nullity. However, the most important question on this appeal concerns the extent to which the validity of a preliminary injunction may be collaterally attacked in an action in criminal contempt by asserting the unconstitutionality of the injunction.

The law of this State is clear that a circuit court judge can issue a preliminary injunction upon the *ex parte* motion of the plaintiff. *W. Va. Code,* 53-5-9 [1955]; *Kalbitzer v. Goodhue,* 52 W. Va. 435, 44 S.E. 264 (1903); *Powhatan Coal & Coke Co. v. Ritz,* 60 W. Va. 395, 56 S.E. 257 (1906). While occasionally this may appear to be a harsh procedure, on balance it assures the continued good order of society by giving an immediate remedy to persons suffering from unlawful interference with the exercise of their rights. The defendant may always enter the circuit court with a motion to dissolve a preliminary injunction and may appeal an adverse ruling on that question to this Court. *W. Va. Code,* 58-5-1(g) [1925].

It has long been the traditional rule in the United States that a court having jurisdiction of the parties and the subject matter may issue an injunction which must be obeyed regardless of whether the injunction is erroneously or improvidently awarded. *United States v. Thompson,* 319 F.2d 665 (2d Cir. 1963); *Land v. Dollar,* 190 F.2d 366, *cert. dism'd.* 344 U.S. 806 (1952). However, an injunction void for lack of jurisdiction is a nullity, and punishment through the contempt power for disobe-

dience of the order will not be upheld. *Powhatan v. Ritz, supra.* This latter rule creates great confusion and such an eventuality is the fondest hope of everyone who would disregard the orders of a court. While jurisdiction of the parties is easily determined, subject matter jurisdiction has presented difficult conceptual problems. The best rule for counsel to follow is that when in doubt, it should be assumed the court has jurisdiction.

Courts have protected their right to enforce orders by holding that a court has the power to maintain the *status quo* in the form of a temporary injunction while the court determines its own jurisdiction or authority to grant relief. Therefore, violation of an injunction issued for that purpose may be punished as criminal contempt, even if the court later determines that it is without jurisdiction to grant the ultimate relief requested. *United States v. United Mine Workers,* 330 U.S. 258 (1947).

The crucial question in most injunction cases of this type is what is meant exactly by subject matter jurisdiction or the absence of such jurisdiction which would justify violation of an injunction. To answer, it may be simply stated that jurisdiction signifies the power of a court to speak the law, both in terms of formulating laws of general application and in terms of applying the law to individual cases. Many courts have been said to lack jurisdiction not because they lacked the requisite adjudicatory authority over the parties or the subject matter, but because they failed to exercise their power in a proper manner.[2]

---

[2]Failure to give defendant adequate notice or opportunity to defend deprives the court of jurisdiction, *Restatement (Second), Conflict of Laws,* Introductory Note c.4; when no claim for relief is stated, the court lacks jurisdiction, *Montana-Dakota Util. Co. v. Northwestern Public Service Co.,* 341 U.S. 246 (1951); when absent parties are indispensible, the court lacks jurisdiction to proceed [dictum], *Bank of California v. Superior Court,* 106 P.2d 879 (1940).

It is true that a simple, easily comprehensible definition of subject matter jurisdiction is almost a contradiction in terms. Complex issues often make the determination of subject matter jurisdiction difficult, as for example, justiciability, ripeness, mootness, standing, case or controversy, and political questions.

While we recognize the problems of logic inherent in punishing a citizen for violating a court order void *ab initio*, we recognize that a balance must be struck with the inherent power and duty of courts to enforce their orders and the concomitant necessity of preventing citizens from ignoring authoritative pronouncements of courts on mere chance that the orders will be subsequently invalidated.

In *United States v. United Mine Workers*, 330 U.S. 258 (1947), the Government sought a declaratory judgment of the defendants' right to terminate their contract unilaterally, and at the same time requested and were granted a temporary restraining order to prevent a nation-wide coal strike pending a determination of the defendants' right to strike. The memorandum in support of the temporary restraining order seriously urged the inapplicability of the Norris-LaGuardia Act, and alleged the power of the District Court to grant injunctive relief once it was determined that the Norris-LaGuardia ban on Federal Court injunctions did not apply. The temporary restraining order was served three days prior to the date of the strike. No motion to vacate the order was filed, but rather the order was ignored and coal mines all over the country shut down. The District Court held several members of the union in contempt, and on appeal to the United States Supreme Court challenging the contempt convictions, the Supreme Court said that the "District Court unquestionably had the power to issue the restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." *Id.* at 290. The Court condemned the conduct of the union in unequivocal language, citing *United States v. Shipp*, 203 U.S. 563 (1906). In *Shipp*, a challenge

to a criminal contempt conviction on the grounds of the court's ultimate lack of jurisdiction was rejected by Mr. Justice Holmes:

> "We regard this argument as unsound. It has been held, it is true, that orders made by a court having no jurisdiction to make them may be disregarded without liability to process for contempt. In *re Sawyer*, 124 U.S. 200; *Ex parte Fisk*, 113 U.S. 713; *Ex parte Rowland*, 104 U.S. 604. But even if the circuit court had no jurisdiction to entertain Johnson's petition, and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. It and it alone necessarily had jurisdiction to decide whether the case was properly before it. On that question, at least, it was its duty to permit argument and to take the time required for such consideration as it might need. *See Mansfield, C. & L. M. R. Co. v. Swan*, 111 U.S. 379, 387. Until its judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition, just as the state court was bound to refrain from further proceedings until the same time. . . . The fact that the petitioner was entitled to argue his case shows what needs no proof, that the law contemplates the possibility of a decision either way, and therefore must provide for it." 203 U.S. at 573.

Once we determine that an order issued by a court with jurisdiction over the person and colorable jurisdiction over the subject matter must be obeyed until it is reversed by orderly and proper proceedings, without regard even to the constitutionality of the act under which the order issued, it must then be decided how the question of colorable jurisdiction is to be handled. We find authority in the case of *Howat v. Kansas*, 258 U.S. 181 (1922) which said:

> "An injunction duly issuing out of a court of general jurisdiction with equity powers *upon pleadings properly invoking its action,* and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." (Emphasis added.)[3] 258 U.S. at 189-90.

Therefore, we hold today that in criminal contempt proceedings, the requirement of subject matter jurisdiction is met initially if: 1) the court has the general power to grant the type of relief demanded under any circumstances; 2) the pleadings demonstrate that a set of facts may exist which could *arguably* invoke the court's jurisdiction; and 3) the allegations both with regard to the facts and the applicable law are of sufficient substance to require the court to make, in an adversary proceeding, a reasoned determination of its own jurisdiction. To the extent that the following cases are inconsistent with the holding in this case, they are overruled: *State ex rel. Mason v. Harper's Ferry Bridge Co.,* 16 W. Va. 864 (1879); *State v. Cunningham,* 33 W. Va. 607, 11 S.E. 76 (1890); *State ex rel. Trudgeon v. Blair,* 39 W. Va. 704, 20 S.E. 658 (1894); *Hebb v. County Court,* 48 W. Va. 279, 37 S.E. 676 (1900); *Laidley v. Jasper,* 49 W. Va. 526, 39 S.E. 169 (1901); *Morgan v. County Court,* 53 W. Va. 372, 44 S.E. 182 (1903); *Powhatan Coal & Coke Co. v. Ritz,* 60

---

[3]Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, *Worden v. Searls,* 121 U.S. 14 (1887), or though the basic action has become moot, *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418 (1911).

W. Va. 395, 56 S.E. 257 (1906); *State ex rel. Fortney Lumber & Hardware Co. v. B. & O. Ry. Co.*, 73 W. Va. 1, 79 S.E. 834 (1913); *White v. County Court*, 99 W. Va. 504, 129 S.E. 401 (1925).

The rule that unconstitutional court orders must nevertheless be obeyed until set aside presupposes that: the court issuing the order enjoys personal jurisdiction and colorable subject matter jurisdiction over the controversy; adequate and effective remedies are available for orderly and prompt review of the challenged rulings; and, the court order and subsequent conduct does not require an irretrievable surrender of constitutional guarantees. *United States v. Dickinson*, 465 F.2d 496 (5th Cir. 1972). Therefore, the need for alacrity is paramount with regard to temporary injunctions and courts may lose their power to enforce their orders by being dilatory in providing hearings on motions to dissolve because delay may in certain circumstances require the irretrievable surrender of constitutional rights. Consequently, we hold further that it is incumbent upon the issuing court in cases involving temporary injunctions to take all steps necessary to conduct the jurisdictional hearing regarding challenged orders immediately. The speed with which the court moves to conduct the hearing must be commensurate with the rights affected by the order, and may vary from a matter of days to a matter of hours.

A reading of cases permitting one form of collateral attack or another upon a contempt conviction raises the issue of courts acting clearly beyond their jurisdiction. While some opinions speak in terms of usurpation or abuse of power, we prefer to characterize obvious usurpation or abuse as bad faith on the part of the issuing court. Where a court is acting in bad faith with an awareness of its lack of power, a collateral attack can be made in a criminal contempt action, but bad faith requires clear and convincing evidence.

The choice between order and liberty is always difficult and never permanent; order is a precondition to the

existence of liberty—and the logical consequence of boundless liberty is inevitably chaos. The law with regard to the sanctity of preliminary injunctions is based upon the well considered policy goal of ordered liberty, and the law recognizes that without such a swift procedure, irreparable injury can be done to one party by another party totally incapable of responding in damages. The correct rule of law is that anyone who would violate a preliminary injunction issued by a court with general equity powers and later seek collaterally to attack it in an action for criminal contempt must stand ready to prove that the injunction was not issued in good faith and that the legal process was being used as a vehicle for intimidation. It is not sufficient to demonstrate that the judge issuing the injunction proceeded from an erroneous understanding of the law, nor that the party seeking the injunction misrepresented the circumstances to the judge. Anyone who would violate a preliminary injunction does so at great peril and must be held to the logical consequences of undertaking such a risk.

## II

There has long been an unsettled area in the law with regard to the distinction between criminal and civil contempt, and the courts have characterized various findings on contempt as either criminal or civil without regard to any readily comprehensible theory. A fair reading of the history of contempt and recent cases on the subject, however, indicates that it is possible to articulate which contempt proceedings are criminal and which are civil.

In general criminal contempt is for the purpose of protecting the dignity of the court itself, preserving the orderliness of court proceedings, and vindicating the power of court orders when they are violated in a willful, contumacious, and offensive manner. Criminal contempt, therefore, is concerned primarily with the dignity of the court itself. Civil contempt, on the other hand, is concerned primarily with the vindication of the legal

rights of interested litigants. For example, where a husband refuses to pay judicially awarded alimony to his wife, he may be incarcerated under the contempt power until such time as he either pays or agrees to pay. The husband's mere incarceration does not make the contempt criminal rather than civil, if he has been incarcerated for the benefit of another litigant (in this case his former wife), and the dignity of the court has not been affronted. However, the same husband can convert his civil contempt into criminal contempt by being disrespectful, abusive, or contumacious toward the court, in which case the court may incarcerate him for a definite period regardless of his future willingness to comply with the court order. In other words, whenever a defendant in a contempt proceeding "has the keys to the jail in his own pocket," *In re Nevitt*, 117 F. 448 (8th Cir. 1902), and may release himself from jail by performing such act or acts as the court directs, the contempt is civil in nature and rules regarding criminal contempt do not apply regardless of the ultimate length of the jail term. *Doyle v. London Guarantee Co.*, 204 U.S. 599 (1907); *Oriel v. Russell*, 278 U.S. 358 (1929); *Fox v. Capital Co.*, 299 U.S. 105 (1936).

Conversely, whenever a defendant is incarcerated for a definite period for having failed to obey a court order, the contempt is criminal and not civil; likewise, when a party is required to pay a fine to the State in order to purge himself of contempt for having disobeyed a court order (as opposed to a fine in the nature of monetary damages to another party litigant) the imposition of such fine constitutes criminal contempt. *Parker v. United States*, 153 F.2d 66 (1st Cir. 1946).[4]

---

[4]A defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal because the contempt goes to the power and dignity of the court. However, because remedial relief imposed to protect the rights of a party litigant falls with an order which events prove was erroneously issued, a citation for civil contempt of that order must also fall when the order

## III

In the case at bar the appellants allege that they were convicted of criminal and not civil contempt, and that they were not accorded their due process rights because they were denied a jury trial and other procedures constitutionally mandated in criminal prosecutions. This Court agrees that appellants were found guilty of criminal and not civil contempt and, therefore, the rules applicable to a prosecution for criminal contempt apply to them. However, as the penalties imposed were trivial, and as the procedure was fair to the appellants, the circuit court acted correctly.

In a recent line of decisions the United States Supreme Court has consistently narrowed the former plenary powers of courts of general jurisdiction to punish contempt. Under the due process clause of the Fourteenth Amendment the Supreme Court has held that if the penalty to be imposed is more than "trivial," certain basic procedural due process requirements applicable in ordinary criminal cases are equally applicable in contempt proceedings. These requirements include, under appropriate situations, the right to a hearing, *In re Green*, 369 U.S. 689 (1962); the right to trial by jury, *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974); and the right to an impartial judge, *Mayberry v. Pennsylvania*, 400 U.S. 455 (1971); *Johnson v. Mississippi*, 403 U.S. 212 (1971). Although the Supreme Court has not spoken to the issue of the monetary amount of a fine necessary to raise a contempt conviction from the trivial to the substantial category, the Court has mandated that any jail term for criminal contempt in excess of six months involves a substantial penalty and elevates the contempt

---

is set aside. *Worden v. Searls*, 121 U.S. 14 (1887); *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.*, 86 F.2d 727 (2d Cir. 1936); *United States v. United Mine Workers*, 330 U.S. 258 (1947).

proceeding from the trivial category and makes it susceptible to the due process requirements listed above.

In the case at bar the petitioners were not sentenced to a jail term in excess of six months, nor in fact did they serve any more than a few hours in jail. Their contempt, however, was not civil in spite of the fact that they could purge themselves of such contempt by returning to work, discontinuing their previous course of conduct, and paying their fines, because the fines themselves were criminal in nature.

Where the punishment is trivial a summary disposition may be made without a jury by the judge who issued the original order. The record discloses that the appellants were informed of their right to have counsel and that they knowingly and intelligently waived that right. *See Faretta v. California,* 422 U.S. 806 (1975). Adequate time was given to them for the preparation of their defense and the court assisted them in eliciting testimony from appellee's witnesses which might have exonerated them from the charge. Although the court did not inform them that if they could not afford counsel, counsel would be appointed to represent them, there is no suggestion that any of the appellants was indigent, and while in future criminal contempt cases we hold that all persons must be advised explicitly of right to counsel and that if they are indigent counsel will be appointed, *Argersinger v. Hamlin,* 407 U.S. 25 (1972), there is no allegation in the record either in this Court or below that the appellants in this instance were indigent. Any constitutional error in that regard was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18 (1967); *Spaulding v. Warden,* ____ W. Va. ____, 212 S.E.2d 619 (1975).

In determining whether a fine levied against a person found in contempt of court is "trivial" or so "substantial" as to elevate the proceeding to the standards of a full-blown criminal trial, the court must look to the facts and circumstances surrounding each case. While confine-

ment is more or less an equal burden on all potential defendants, a $500.00 fine to one man can be far more onerous than $10,000.00 to another, and more onerous yet than $100,000.00 to a large, impersonal corporation or union. A monetary fine is presumed to be trivial and does not usually require the elaborate due process requirements of a criminal trial. However, where a court contemplates levying a fine as punishment for criminal contempt, the question of whether the penalty is trivial or substantial must be decided in each case with reference to the defendant's means and the hardship to be undergone in paying the fine.

For the foregoing reasons the judgment of the Circuit Court of McDowell County is affirmed.

*Affirmed.*