902 F.2d 1158
 58 USLW 2684, 15 Fla. L. Week. D2684
 William Wallace FINLATOR; John S. Friedman; Vasudha Gupta;
Bruce Jacobs; Slater E. Newman; John Browner, d/b/a Bell,
Book & Coffee; Robert H. Sheldon, d/b/a Internationalist
Books, Plaintiffs-Appellants,
v.
Helen A. POWERS, Secretary of Revenue, Defendant-Appellee.
 No. 89-2767.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1990.
Decided May 10, 1990.
 
 Brian Lloyd Rubin, Sidley & Austin (argued), Washington, D.C. (Ronald S. Flagg, Sidley & Austin, Washington, D.C., Donnell Van Noppen, III, Smith, Patterson, Follin, Curtis, James & Harkavy, Raleigh, N.C., on brief), for plaintiffs-appellants.
 Donald Wayne Laton, Asst. Atty. Gen., North Carolina Dept. of Justice (argued), Raleigh, N.C. (Lacy H. Thornburg, Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., on brief), for defendant-appellee.
 Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.
 ERVIN, Chief Judge:
 
 
 1
 The appellants brought this action against the Secretary of Revenue (the "Secretary") of the State of North Carolina (the "State") to enjoin the enforcement and challenge the constitutionality of N.C.Gen.Stat. Sec. 105-164.13(14) (the "Exemption"), which exempts "Holy Bibles" from the State's retail sales and use tax. The appellants claim that the Exemption violates the establishment clause of the United States Constitution, and constitutes content-based discrimination in violation of the first amendment and 42 U.S.C. Sec. 1983. The district court granted the Secretary's motion to dismiss, holding that the appellants lacked the requisite standing to maintain this suit. The appellants now appeal that decision, contending that: (1) they have standing as non-exempt parties; (2) alternatively, they have standing as taxpayers; and (3) if we conclude that they do have standing to pursue this action, we should address the merits of their complaint, hold that the Exemption is unconstitutional, and enjoin its enforcement. For the reasons set forth below, we conclude that the appellants do have standing to bring this suit as non-exempt parties, and that the Exemption is unconstitutional. Accordingly, we reverse the decision of the district court.
 
 I.
 
 2
 John Friedman, Vasudha Gupta and Bruce Jacobs each have been taxed by the State on their separate purchases of books which they and their respective religions consider sacred.[1] Both William Finlator and Slater Newman have been taxed on their individual purchases of non-sacred books.[2] John Browner[3] and Robert Sheldon[4] are booksellers who have collected the State's sales tax from these purchasers, and remitted the tax to the Secretary as required under the North Carolina Sales and Use Tax Act, N.C.Gen.Stat. Secs. 105-164.1 et seq. (1989) (the "Act").[5] The sale and purchase of "Holy Bibles" is not subject to taxation under the Act by reason of the Exemption.[6] On January 11, 1989, these five book purchasers and two booksellers (collectively referred to as the "appellants") brought this action against the Secretary to enjoin the enforcement of the Exemption and challenge its constitutionality. By letter dated May 1, 1989, the parties informed the trial court that they did not intend to conduct any discovery because they believed that the case presented legal issues exclusively. They also requested that the district court rule on the appellants' motion for summary judgment and the Secretary's motion to dismiss, which previously had been filed with the court. On July 20, 1989, the court below dismissed this case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, holding that the appellants lacked standing to bring this action since they did not allege an actual injury. The appellants' motion for summary judgment was denied as moot, and this appeal followed.
 
 II.
 
 3
 Courts reviewing dismissals under Rule 12(b)(6) are guided by the long-established rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957), quoted in Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191, 199 (4th Cir.1963); see also District 28, United Mine Workers of America, Inc. v. Wellmore Coal Corp., 609 F.2d 1083, 1085 (4th Cir.1979). In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S.Ct. 1843, 1848-49, 23 L.Ed.2d 404 (1969). Most importantly, dismissals are reviewed de novo on appeal. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989).
 
 III.
 
 4
 Article III of the United States Constitution limits the judicial power of the federal courts to resolving actual cases and controversies. Due in large part to this constitutional limitation on the jurisdiction of the federal judiciary, the Supreme Court has developed certain rules regarding the "justiciability" of disputes. See generally Flast v. Cohen, 392 U.S. 83, 94-97, 88 S.Ct. 1942, 1949-51, 20 L.Ed.2d 947 (1968). Foremost among these various rules is the doctrine of standing. Standing asks whether a party has a sufficient personal stake in the outcome of an otherwise justiciable controversy to obtain relief through a judicial resolution of that controversy. Sierra Club v. Morton, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). In theory, standing differs from all other aspects of justiciability because of its primary focus on the actual party bringing the suit more than the legal issue presented for adjudication. Flast v. Cohen, 392 U.S. at 99, 88 S.Ct. at 1952. Simply stated, the consideration of standing ensures the appropriateness of a particular party to pursue specific litigation. Id. at 100, 88 S.Ct. at 1952. At its fundamental core, therefore, standing subsumes a blend of constitutional requirements and prudential considerations. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).
 
 
 5
 Generally, a plaintiff has standing to bring a case if the party personally has suffered some actual or threatened injury arising from the putatively illegal conduct of the defendant, the demonstrated injury fairly can be traced to the challenged action, and the injury is likely to be redressed by a favorable decision of the court. Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In the shorthand analysis of standing, these three basic requirements are referred to as injury-in-fact, causation and redressability, and they are central to any discussion of standing.
 
 
 6
 Today, the question of standing arises most often in suits challenging government conduct or involving what some writers have referred to as "public law litigation." See L. Tribe, American Constitutional Law 107 (2d ed. 1988); Chayes, The Supreme Court, 1981 Term--Foreword: Public Law Litigation and the Burger Court, 96 Harv.L.Rev. 4, 8-10 (1982). This is the very context in which standing is challenged in the case sub judice. In these types of cases, the narrow question of whether the plaintiff has suffered an actual injury is typically disputed.
 
 
 7
 In two recent decisions, the Supreme Court concluded that non-exempt taxpayers have standing to challenge the constitutionality of state tax exemptions. Texas Monthly, Inc. v. Bullock, --- U.S. ----, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989); Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987). In Arkansas Writers' Project, the Court, per Justice Marshall, stated that to deny standing to such parties "would effectively insulate underinclusive statutes from constitutional challenge." 481 U.S. at 227, 107 S.Ct. at 1726 (citing Orr v. Orr, 440 U.S. 268, 272, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979)). In addition, the Court noted that its decision was consistent with the "numerous decisions of this Court in which we have considered claims that others similarly situated were exempt from the operation of a state law adversely affecting the claimant." Id. (citations omitted).[7]
 
 
 8
 The Secretary argues that an implicit requirement of Arkansas Writers' Project and Texas Monthly is that non-exempt parties must take certain minimal steps to ensure their standing, such as contesting the tax prior to its payment, refusing to pay the tax, paying the tax under protest or a reservation of rights, paying the tax and seeking a refund, or taking some other action to permit the state to preclude or redress their injuries ab initio. See Arkansas Writers' Project, 481 U.S. at 225, 107 S.Ct. at 1725 (the plaintiff initially contested the tax assessment); Texas Monthly, 109 S.Ct. at 895 (the plaintiff sought a refund of the tax paid under protest). The Secretary insists that this prerequisite for standing is simply a reflection of the general requirement that the plaintiff must show that he sustained an injury that was caused by the supposedly illegal conduct of the defendant. See Valley Forge, 454 U.S. at 472-73, 102 S.Ct. at 758-59; Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979).
 
 
 9
 If we were to apply this implicit requirement to the instant case, there is no doubt that the appellants have failed to take those steps which the Secretary contends are necessary to ensure standing. For example, none of the appellants applied for a tax refund under N.C.Gen.Stat. Sec. 105-266.1,[8] or protested the payment of taxes as set forth in N.C.Gen.Stat. Sec. 105-267.[9] It should also be noted that the North Carolina Department of Justice expressly informed the North Carolina Civil Liberties Union Legal Foundation, the sponsor of this litigation, that the appellants would be entitled to the Exemption. See Joint Appendix at 15. The unavoidable conclusion is that the appellants must or should have known that they would have been entitled to a refund of all sales taxes that had been assessed and paid on sacred literature. Presumably, the Secretary also would have refused to refund any taxes paid on non-sacred texts, and the appellants then indisputably would have had standing to bring this suit. However, these events never occurred.
 
 
 10
 While there is some justification for the Secretary's interpretation of Arkansas Writers' Project and Texas Monthly, we decline to read such an implicit requirement into these decisions absent a clear statement by the Supreme Court to that effect. Realistically, if this court were to deny standing in this case, the appellants would simply protest the payment and collection of the State's sales tax, and refile their suit. We do not believe that this additional requirement would improve the vigorousness or quality of the parties' advocacy, would enhance the posture of this case, would clarify the legal issues presented for review, would strengthen the justiciability of the appellants' claims, or would contribute in any way to our ability to decide a question presented and contested by parties having a demonstrated interest and stake in its resolution. Moreover, we conclude that the appellants did suffer actual injury in this case as a result of the discriminatory treatment dispensed by the Secretary--purchasers of "Holy Bibles" need not protest the State's sales tax in order to claim the Exemption, while purchasers of other texts, both sacred and non-sacred, must protest the sales tax in order to claim the Exemption. Simply stated, an injury is created by the very fact that the Secretary imposes additional burdens on the appellants not placed on purchasers of "Holy Bibles." Finally, we believe that it would be an untenable waste of judicial resources to deny the appellants standing in this case given the patent unconstitutionality of the Exemption. As noted above, standing is an amalgam of prudential as well as constitutional concerns, but none of the prudential concerns of standing doctrine compels the denial of standing in this case.
 
 
 11
 The Secretary advances the additional argument that under no condition could the book purchasers have standing to challenge the Exemption because only the economic and not the legal incidence of the tax was upon them. In other words, the Secretary claims that the book purchasers were not legally obligated to pay or remit the sales tax to the State, and consequently, that they had no grounds upon which to challenge the Exemption. This argument is specious. The Act specifically states that "[i]t is the purpose and intent of this Article that the tax herein levied and imposed shall be added to the sales price of tangible personal property when sold at retail and thereby be borne and passed on to the customer, instead of being borne by the retailer." N.C.Gen.Stat. Sec. 105-164.7. This is a sufficient statement of legislative intent to infer that the purchaser bears the full brunt of the tax, including the implied legal obligation to tender payment of the tax at the time of sale. It is quite true that under the statutory framework of the Act, the merchant collects the tax as the "trustee for and on account of the State." However, the mere fact that a retailer has an independent legal obligation to collect and remit the sales tax does not in any way diminish a purchaser's patent obligation to pay the tax in the first instance.
 
 
 12
 Because the appellants do have standing to pursue their claims as non-exempt parties, this court need not address the issue of taxpayer standing.
 
 IV.
 
 13
 Turning to the merits of this case, we conclude that the Exemption contravenes the establishment clause of the United States Constitution. In Texas Monthly, Inc. v. Bullock, --- U.S. ----, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), the Supreme Court held that a Texas sales and use tax exemption which applied to religious literature, but not to other types of literature, violated the establishment clause of the first amendment to the Constitution.[10] We agree with the appellants that this case presents a more untenable violation of the establishment clause because the Exemption specifically applies to "Holy Bibles," a religious text sacred only to members of Christian faiths.
 
 
 14
 The Exemption also violates the free press clause of the Constitution. In Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), the Supreme Court concluded that an Arkansas sales tax scheme, which exempted from taxation some but not all classes of magazines,[11] violated the first amendment's guarantee of freedom of the press because of its content-based discrimination. The Court noted that "even where, as here, there is no evidence of an improper censorial motive ... selective taxation of the press--either singling out the press as a whole or targeting individual members of the press--poses a particular danger of abuse by the State." Id. at 228, 107 S.Ct. at 1727. The Court concluded that "the Arkansas sales tax cannot be characterized as nondiscriminatory, because it is not evenly applied to all magazines," and that "the basis on which Arkansas differentiates between magazines is particularly repugnant to first amendment principles: a magazine's tax status depends entirely on its content." Id. at 229, 107 S.Ct. at 1727 (emphasis in original). In the instant case, the Exemption differentiates between a Christian sacred text and other publications, both sacred and non-sacred and Christian and non-Christian. This distinction forces the State to discriminate on the basis of the contents of a book, text or other published work, which is intolerable under the first amendment. The Secretary argues that, despite its plain wording, she has attempted to apply the Exemption in a constitutional manner by interpreting it so that any sacred scriptures of any religion can qualify for the exemption upon proper review and consideration.[12] However, it is precisely this type of "official scrutiny of the content of publications as the basis for imposing a tax" that is so repugnant to the free press clause of the Constitution. Id. at 230, 107 S.Ct. at 1728 (citing Regan v. Time, Inc., 468 U.S. 641, 648, 104 S.Ct. 3262, 3266, 82 L.Ed.2d 487 (1984)).
 
 
 15
 Thus, the Exemption is unconstitutional because it contravenes the establishment clause under the reasoning of Texas Monthly, and violates the free press clause under the rationale of Arkansas Writers' Project.
 
 VI.
 
 16
 Based on the foregoing discussion, we believe that the appellants have sufficient standing to maintain this action as non-exempt parties, and conclude that the Exemption must be invalidated as unconstitutional. Accordingly, we reverse the decision of the district court, and permanently enjoin the State's enforcement of the Exemption.
 
 
 17
 SO ORDERED.
 
 
 
 [1]
 Friedman, a Rabbi, bought a copy of Tanakh, the Jewish Bible. Gupta, a member of the Hindu faith, purchased a copy of Bhagavad Gita, a sacred Hindu text. Jacobs, a member of the Hare Krishna faith, procured a copy of The Upanishads, a compilation of Hindu spiritual treatises. Friedman, Gupta and Jacobs were also taxed on purchases of unspecified non-sacred books
 
 
 [2]
 The amended complaint does not specify what types of books the Reverend Finlator and Newman acquired
 
 
 [3]
 Doing business as Bell, Book & Coffee
 
 
 [4]
 Doing business as Internationalist Books
 
 
 [5]
 The tax was remitted to the Secretary pursuant to N.C.Gen.Stat. Sec. 105-164.7, which provides that the tax "shall be paid by the purchaser to the retailer as trustee for and on account of the State and the retailer shall be liable for the collection thereof and for its payment to the Secretary and the retailer's failure to charge to or collect said tax from the purchaser shall not affect such liability. It is the purpose and intent of this Article that the tax herein levied and imposed shall be added to the sales price of tangible personal property when sold at retail and thereby be borne and passed on to the customer, instead of being borne by the retailer." The tax rate is five percent of the retail sales price. N.C.Gen.Stat. Secs. 105-164.4, 105-467, 105-481 & 105-496
 
 
 [6]
 The Exemption provides: "The sale at retail, the use, storage or consumption in this State of the following tangible personal property is specifically exempted from the tax imposed by the Article: * * * (14) Holy Bibles * * *. N.C.Gen.Stat. Sec. 105-164.13(14)
 
 
 [7]
 The decision in Arkansas Writers' Project was followed by this court in Forest Hills Early Learning Ctr., Inc. v. Grace Baptist Church, 846 F.2d 260, 262 (4th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989), a case in which this court recognized the standing of a non-exempt secular child care center to challenge the exemption of religiously affiliated child care centers from Virginia's licensing requirements
 
 
 [8]
 This provision states, in relevant part: "Any taxpayer may apply to the Secretary of Revenue for refund of tax or additional tax paid by him.... The Secretary shall grant a hearing thereon, and if upon such hearing he shall determine that the tax is excessive or incorrect, he shall resettle the same according to the law and the facts, and adjust the computation of tax accordingly."
 
 
 [9]
 This provision states, in relevant part: "Whenever a person shall have a valid defense to the enforcement of the collection of a tax assessed or charged against him or his property, such person shall pay such tax to the proper officer, and such payment shall be without prejudice to any defense of rights he may have in the premises. At any time within 30 days after payment, the taxpayer may demand a refund of the tax paid in writing from the Secretary of Revenue and if the same shall not be refunded within 90 days thereafter, may sue the Secretary of Revenue in the courts of the State for the amount so demanded.... If upon the trial it shall be determined that such a tax or any part thereof was levied or assessed for an illegal or unauthorized purpose, or was for any reason invalid or excessive, judgment shall be rendered therefor...."
 
 
 [10]
 Justices Brennan, Marshall and Stevens expressed their view that Texas' sales tax exemption for religious publications violated the establishment clause, that the exemption was not compelled by the free exercise clause, and that the Court need not determine whether the exemption contravened the free press clause as well. Justices Blackmun and O'Connor agreed that the exemption violated the establishment clause, but believed that it was unnecessary to decide whether the exemption was required by the free exercise clause. Justice White concurred in the judgment, opining that the exemption, because of its content-based discrimination, violated the free press clause. Justice Scalia, joined by Chief Justice Rehnquist and Justice Kennedy, dissented, expressing the opinion that the exemption violated neither the establishment clause nor the free press clause, and that the court's decision effectively overruled prior Supreme Court cases based on an accommodation of religion. The tax exemption at issue in Texas Monthly applied to: "Periodicals that are published or distributed by a religious faith and that consist wholly of writings promulgating the teaching of the faith and books that consist wholly of writings sacred to a religious faith." Tex.Tax Code Ann. Sec. 151.312 (1982)
 
 
 [11]
 The magazine exemption covered "religious, professional, trade and sports journals and/or publications printed and published within this State ... when sold through regular subscriptions." Ark.Stat.Ann. Sec. 84-1904(j) (1980) (since recodified as amended at Ark.Stat.Ann. Sec. 26-52-401(14) (1987))
 
 
 [12]
 It appears from the record in this case that the Secretary will not extend the Exemption to other sacred literature "without first reviewing said publication." See Joint Appendix at 16