399 S.E.2d 657 (1990)
Kayette MEADOWS, on Behalf of the PROFESSIONAL EMPLOYEES OF the WEST VIRGINIA EDUCATION ASSOCIATION; Barbara Christian, on Behalf of the West Virginia Federation of Teachers; and Bob Brown, on Behalf of the West Virginia Federation of Teachers
v.
Honorable John HEY, Judge of the Circuit Court of Kanawha County; The State Board of Education; and Dr. Henry Marockie, State Superintendent of Schools and Chief Executive Officer of the State Board of Education.
No. 19576.
Supreme Court of Appeals of West Virginia.
November 9, 1990.
*659 W.J. Arceneaux, III, Lewis, Ciccarello & Friedberg, Charleston, Grant Crandall, Crandall & Pyles, Charleston, for WV Educ. Assoc.
Roger W. Tompkins, Atty. Gen., Dana D. Davis, Chief Deputy Atty. Gen., Bruce Ray Walker, Deputy Atty. Gen., Charleston, for respondents.
William B. McGinley, WV Educ. Ass'n, Charleston, for Kayetta Meadows.
Larry Harless, Charleston, for B. Christian and B. Brown.
James M. Haviland, McIntyre, Haviland & Jordan, Charleston, amicus curiae Brief on behalf of American Federation of State, County and Mun. Employees.
*658 BROTHERTON, Justice:
This case involves a petition for a writ of prohibition brought by the petitioners, Kayetta Meadows, on behalf of the professional employees of the West Virginia Education Association (WVEA), and Barbara Christian and Bob Brown, on behalf of the West Virginia Federation of Teachers, against the Honorable Judge John Hey, asking that this Court halt proceedings in the Kanawha County Circuit Court.[1] Following this Court's opinion in Jefferson County Board of Education v. Jefferson County Education Association, et al., ___ W.Va. ___, 393 S.E.2d 653 (1990), Judge Hey held a hearing on the statewide injunction issue on March 16, 1990, and entered an order enjoining all West Virginia public school teachers from striking and ordering them to return to work. The petitioners filed this petition for a Writ of Prohibition on March 16, 1990, following Judge Hey's hearing, in anticipation of the statewide injunction order. This Court immediately stayed Judge Hey's order and issued a rule directing the respondents to appear before this Court and to show cause why the writ of prohibition prayed for by the petitioner should not be granted. This proceeding is limited exclusively to the issue of whether the Circuit Court of Kanawha County had jurisdiction to issue a statewide injunction.
The petitioners argue first that this case is moot because the teachers have returned to work and thus, they have filed a motion to dismiss. In the alternative, the petitioners argue that Kanawha County cannot award injunctive relief because its jurisdiction is limited to matters involving Kanawha County, West Virginia. We agree in part with the petitioners' argument and hold that under Chapter 53 of the West Virginia Code, there is no authority for a judge of one circuit to issue a statewide injunction affecting "acts" occurring in other circuits when there is no underlying judgment or proceeding.
All parties to this strike must realize that ultimately, our State's plans for an economic renaissance depend upon our children and their ability to cope with the complex issues that will face them. This Court is well aware that the State is seeking to upgrade the educational system to provide our children with a quality education that will equip them to compete in the future. Both the State Constitution and this Court have established that education is a fundamental right. W.Va. Const. art. XII, § 1; see also Pauley v. Kelly, 162 W.Va. 672, 255 S.E.2d 859 (1979). Unfortunately, work stoppages which involve the public schools, regardless of merit or length, serve only to harm the children of this State. Therefore, both sides must try their utmost to resolve their differences before a work stoppage occurs, and strikes should be dealt with promptly and with finality so as to avoid repetition.
Regardless of our opinions about the strike, it is not this Court's duty to legislate; nor were we elected to make political decisions based upon what we believe to be the expedient answer to this situation. Instead, we are charged with the task of interpreting the Constitution and the laws of this State as they exist. A judicial system that substitutes its beliefs for the constitutional principles of its people is a mockery of justice.
*660 Article XII, § 1 of the West Virginia Constitution proclaims that "the Legislature shall provide, by general law, for a thorough and efficient system of free schools." Thus, in Pauley v. Kelly, 162 W.Va. 672, 255 S.E.2d 859 (1979), this Court held that "[t]he mandatory requirements of `a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Virginia Constitution makes education a fundamental constitutional right in this State." Id. at syl. pt. 3.[2]
The power of the State Board of Education was established in W.Va.Code § 18-2-1, et seq. (1988). West Virginia Code § 18-2-5 provides that the State Board of Education has the power to "determine the educational policies of the State and shall make rules for carrying into effect the laws and policies of the State relating to education, including rules relating to ... the issuing of certificates upon credentials, ... the general powers and duties of county boards of education, and of teachers, principals, supervisors and superintendents, and such other matters pertaining to the public schools of the State as may seem to the state board to be necessary and expedient."[3]
Further, W.Va.Code § 18A-3-2 requires, before any teacher may be employed in the state school system, that he or she obtain a valid teaching certificate from the state superintendent of schools based on certain standards and requirements approved by the State Board of Education before they can enter into a teaching contract with a county board of education. West Virginia Code § 18A-3-6 grants the state superintendent power to revoke the certificate for "drunkenness, untruthfulness, immorality,... or for any neglect of duty or refusal to perform the same," as well as other grounds.
However, the power of the State Board of Education is diluted by W.Va.Code § 18-5-1 et seq. (1988), which sets out the powers and duties of county boards of education. West Virginia Code § 18-5-1, et seq., provides the county with the authority to control and manage their individual school districts. West Virginia Code § 18A-2-2 states that all teachers will execute a contract with their county boards of education, which provides the salaries, in the form prescribed by the state superintendent of schools. West Virginia Code § 18-5-15(a) provides the county boards with the power to provide the employment term for teachers within the legislatively prescribed limits. In addition, the county school board possesses authority to "suspend or dismiss" a teacher from employment for "immorality, incompetency, cruelty, insubordination, intemperance, or willful neglect of duty." W.Va.Code § 18A-2-8. In State ex rel. Dilley v. W.Va. Public Employees Retirement System, ___ W.Va. ___, 375 S.E.2d 202, 204 (1988), the Court recognized that a county school board is the exclusive employer of the teachers in that county:
The jurisdiction of a school district includes all the territory in one county, W.Va.Code, 18-1-3 (1933), and the board is given broad authority to control and manage the schools and school interests for all school activities and upon all school property. The board's powers include, but are not limited to, the power to: establish schools; close schools; employ *661 teachers and assign them; employ other personnel; and, make rules and regulations for the government of the schools. W.Va.Code, 18-5-13 (1988).
Faced with the dichotomy between state and county authority, this Court must address the question of the jurisdiction of a circuit court to deal with a statewide school issuea strike in the form of a work stoppage which shuts down the entire state school system.
This Court has recognized that West Virginia was divided into separate judicial circuits in order to prevent overlapping jurisdiction. In Click v. Click, 98 W.Va. 419, 127 S.E. 194 (1925), this Court stated that "[n]o one will contend, however, that it was the intention of the Constitution that circuit judges should exercise their authority and powers indiscriminately all over the state...."
By the very act of dividing the state into circuits, with the provisions aforesaid, as to the election and residence of a judge, the Constitution clearly contemplated territorial limitations upon each circuit judge. If not, why the circuits? Territorial jurisdiction was necessarily implied to prevent overlapping jurisdictions by circuit judges, and consequent abuse of their authority. The orderly conduct of litigation demands that each circuit court shall determine the cases within its circuit, and except when specially authorized, interfere in no way with cases and litigants without its circuit. By limiting their authority to their circuits, conflicts in jurisdiction are avoided and litigation and litigants are safeguarded from extraterritorial interference.
Id. 127 S.E. at 197. The Court specifically held that "[t]he inherent, as well as the express, powers of a circuit court must be exercised within the territorial jurisdiction of that court, unless the fields of their use are enlarged by positive legislative enactment." Id. at syl. pt. 1 (emphasis added).
The application of this principle, however, is anything but simple. A positive legislative enactment is found in W.Va. Code § 53-5-4 (1981), which provides the general jurisdiction necessary for a judge to issue an injunction:
Every judge of a circuit court shall have general jurisdiction in awarding injunctions, whether the judgment or proceeding enjoined be in or out of his circuit, or the party against whose proceeding the injunction be asked reside in or out of the same. (Emphasis added.)[4]
However, in this case, what the Code gives, it also takes away. West Virginia Code § 53-5-3 (1981) directly contradicts the general jurisdiction established in Section 4 by limiting the court's jurisdiction:
Jurisdiction of a bill for an injunction to any judgment, act or proceeding shall, unless it be otherwise specially provided, be in the circuit court of the county in which the judgment is rendered, or the act or proceeding is to be done, or is doing, or is apprehended, and the same may be granted to the judgment of a *662 justice in like manner and with like effect as to other judgments. (Emphasis added.)[5]
In interpreting W.Va.Code § 53-5-4, the court must closely examine the statute's language.[6] West Virginia Code § 53-5-4 establishes general jurisdiction to issue extraterritorial injunctions only for a "judgment or proceeding." No reference is made to an "act" in that section. West Virginia Code § 53-5-3 reflects the same theory, specifically ordering that jurisdiction exists for an "act" only where the act occurs, unless otherwise specially provided. No provision is found in W.Va.Code § 53-5-4, nor in the remainder of the statute, which specially provides extraterritorial jurisdiction for injunctions affecting acts. Thus, since the strike which is the subject of Judge Hey's injunction can only be classified as an "act" rather than a judgment or proceeding, we cannot find that jurisdiction has been specially provided for outside W.Va.Code § 53-5-3.[7]
The question arises as to how "act" should be interpreted.[8] An argument can be made that the "act" referred to by W.Va.Code § 53-5-3 could be defined as a "statute" rather than an "action." We do not believe this interpretation is valid. The plain meaning of a statute should be rejected only if there is substantial, unambiguous evidence supporting a contrary interpretation. Matala v. Consolidation Coal Co., 647 F.2d 427 (4th Cir. W.Va.1981). "Act" has been defined as something done or established and may mean, in a general legal sense, something done by the individual. Jacobs v. State, 200 Ga. 440, 37 S.E.2d 187 (1946). See also Benge v. Davis, 553 A.2d 1180 (Del.Supr. 1989); Green v. State, 109 Ga. 536, 35 S.E. 97 (1900).[9] Similarly, a "proceeding" has been "broadly construed to include any step or measure taken in either the prosecution or the defense of the action, except a continuance." Syl. pt. 1, Millar v. Whittington, 87 W.Va. 664, 105 S.E. 907 (1921); Taylor v. Smith, ___ W.Va. ___, 301 S.E.2d 621 (1983).[10]
*663 More importantly, we believe that if the word "act" in W.Va.Code § 53-5-3 is interpreted to mean a "statute" rather than an "action," a circuit court would never have jurisdiction to enjoin an action, regardless of where it occurs. The power of a court to enjoin the illegal actions of its citizens is a crucial and necessary one, and we cannot interpret the statute in a manner that will eviscerate the court's authority.[11] We cannot believe such an impractical result was intended. Consequently, in this case, we conclude that W.Va.Code § 53-5-3 permits a circuit court to enjoin an act only when the injunction is issued in the county in which the act is being performed.
Our conclusion is bolstered by the reasoning found in State ex rel. Chafin v. Hudson, 97 W.Va. 679, 125 S.E. 813 (1924). In syllabus point 1 of Chafin, the Court concluded that:
A circuit court does not have jurisdiction of a bill in chancery filed by the state, at the relation of the Attorney General, solely for the purpose of enjoining an act or proceeding apprehended or being committed, unless the act or proceeding sought to be enjoined is being committed or will be committed in the county in which the suit is instituted; or unless the act or proceeding is being committed or apprehended in an adjoining circuit the judge of which is so situated that it would be improper for him to act.
The Chafin Court specifically found that a "pure injunction suit" cannot be brought in the county where the seat of government is located "unless the act or proceeding to be prohibited is in that county." Id. 125 S.E. at 815. Thus, Chafin prohibited a circuit court of one county from enjoining a matter occurring in another county, absent special provisions for venue. As in Chafin, we have concluded that no special provisions exist in this case.
Similarly, in syllabus point 1 of Wayland Oil & Gas Co. v. Rummell, 78 W.Va. 196, 88 S.E. 741 (1916), the Court concluded that jurisdiction to award an injunction involving title to land was vested "exclusively in the circuit court of the county wherein the act or proceeding sought to be enjoined is to be done, or is doing, or is apprehended, notwithstanding some of the defendants may reside in another county...."[12]
Thus, we find no compelling reason to reverse the rules stated in Chafin, Wayland, and the West Virginia Code. Although the present situation clearly results in a waste of judicial resources, we do not believe that the circuit court of one county has the authority to enjoin the acts of citizens occurring in other counties, except where the judge of the other county is interested in the proceeding and unable to act. However, a circuit court has general jurisdiction under W.Va.Code § 53-5-4 (1981) to grant an injunction in aid of a judgment or proceeding "whether the judgment or proceeding enjoined be in or out of his circuit, or the party against whose proceeding the injunction be asked reside in or out of the same." Since this case involves a pure injunction involving an "act" rather *664 than a judgment or proceeding, we hold that the Kanawha County Circuit Court had no authority to issue a statewide injunction.
In syllabus point 2 of Wayland Oil & Gas v. Rummell, supra, this Court held that:
The award of an injunction by the common pleas court of Kanawha county, wherein some of the defendants reside, to enjoin acts and proceedings being committed and prosecuted or threatened in Lincoln county and affecting real estate therein, is coram non judice and void....
Similarly, the actions of the Kanawha County Circuit Court are void, as the court is without jurisdiction to affect the rights of teachers who reside outside of Kanawha County when the proceeding is purely a suit to enjoin an act. Thus, after examining the language of W.Va.Code § 53-5-3 and § 53-5-4, we can only conclude that Judge Hey's order enjoining the teachers from striking on a statewide basis is prohibited by W.Va.Code § 53-5-3 (1981).[13]
Accordingly, Judge Hey's order enjoining teachers from striking in circuits other than Kanawha County was improper and the writ of prohibition sought by the petitioners is granted.
Writ granted.
NOTES
[1] Upon the decision of Justice Thomas E. McHugh to disqualify himself in this case, retired Justice Fred H. Caplan was recalled to participate in this case pursuant to Section 8 and Article VIII of the West Virginia Constitution.
[2] Since the early 1930's, the Legislature has attempted to create a statewide school system. However, vestiges of the county system still exist, for example: county boards of education, county supervision of the day-to-day operation of the schools under their jurisdiction, and county teaching contracts. While a statewide system under a state board of education and a state superintendent may be the goal of the Legislature, it has not been completely achieved.
[3] Similarly, W.Va.Code § 18-3-4 gives the state superintendent of schools power to institute proceedings to enforce and give effect to the provisions of Chapter 18 (Education) pertaining to the school system of the State. The superintendent is granted the authority to administer oaths and to examine under oath witnesses in proceedings pertaining to the public schools. Article 9A of the West Virginia Code, titled "Public School Support", provides a statewide plan of financial support for the public schools of West Virginia.
[4] West Virginia Code § 56-1-1 (1986) provides the general venue statute for bringing suit in West Virginia. The Code section provides, in pertinent part:

(a) Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:
(1) Wherein any of the defendants may reside or the cause of action arose, except that an action of ejectment or unlawful detainer must be brought in the county wherein the land sought to be recovered or some part thereof, is; or
* * * * * *
(6) If it be on behalf of the state in the name of the attorney general or otherwise, wherein the seat of government is; or
* * * * * *
See also Hesse v. State Soil Conservation Committee, 153 W.Va. 111, 168 S.E.2d 293 (1969).
We note that the procedural statutes relating to venue are effective only as rules of court and subject to modification, suspension, or annulment by rules of procedure promulgated by the Supreme Court. See State ex rel. Kenamond v. Warmuth, ___ W.Va. ___, 366 S.E.2d 738 (1988).
[5] In Shobe v. Latimer, 162 W.Va. 779, 253 S.E.2d 54 (1979), this Court found that W.Va.Code § 53-5-3 is only applicable "where an injunction is the exclusive relief sought, and not where injunctive relief is merely ancillary to the primary claim advanced in the case." Id. at syl. pt. 3 (citations omitted). Since there is no question that the primary objective is to return the teachers to work, W.Va.Code § 53-5-3 is clearly applicable in this case.
[6] Neither W.Va.Code § 53-5-3 nor § 53-5-4 (1981) have been substantially changed since their enactment shortly after West Virginia became a state.
[7] "The statutes [W.Va.Code §§ 53-5-4 and 53-5-7 (1981)] give jurisdiction to award injunctions to judgments rendered or proceedings apprehended out of the judge's own circuit, but direct that in such cases the order for the process of injunction shall be directed to the clerk of the court of that county wherein the judgment is rendered or the apprehended proceeding is to be had. Such statutes give the judge jurisdiction only to award the injunction, not to hear and determine the cause." 10A M.J. Injunctions § 71.
[8] We note that this proceeding involves a pure bill of injunction with no underlying proceeding or judgment as discussed in W.Va.Code §§ 53-5-3 & 4 (1981).
[9] In the absence of any specific indication to the contrary, words used in this statute will be given their common, ordinary and accepted meaning. Hodge v. Ginsberg, ___ W.Va. ___, 303 S.E.2d 245 (1983). Generally, words in a statute are taken to be used in their ordinary sense and acceptation. State v. Cole, 160 W.Va. 804, 238 S.E.2d 849 (1977). The plain language of a statute should be afforded its plain meaning and rules of interpretation are resorted to for the purpose of resolving an ambiguity and not for the purpose of creating one. Crockett v. Andrews, 153 W.Va. 714, 172 S.E.2d 384 (1970).
[10] Our decision today does not mean that an extraterritorial injunction can never be issued. Extraterritorial injunctions can be issued pursuant to W.Va.Code §§ 53-5-3 & 4 when judgments or proceedings are the subject of the injunction. For example, the state superintendent has the power to revoke the teaching certificates previously issued for any of the reasons set forth in W.Va.Code § 18A-3-6. If the teachers disagree with the proceeding, they can bring a writ to enjoin the superintendent in Kanawha County Circuit Court. That court, under West Virginia law, could issue a statewide injunction to uphold or prohibit the superintendent's proceeding to revoke the teaching certificates, not only in Kanawha County, but in every county in the State in which a teacher affected by the revocation was located. Thus, under these circumstances, a proceeding exists upon which a writ for an injunction could be properly based.
[11] In contrast to the West Virginia statute, federal law specifically empowers courts to issue injunctions which affect an entire industry. Chapter 29 of the United States Code, § 178 provides that any district court having jurisdiction of the parties can issue an industry-wide injunction if the strike to which they are parties imperils the national health or safety. See United Steelworkers of America v. United States, 361 U.S. 39, 80 S.Ct. 1, 4 L.Ed.2d 12 (1959).
[12] More recently, this Court discussed injunctions involving titles to land in Ray v. Hey, ___ W.Va. ___, 396 S.E.2d 702 (W.Va.1990), in which we concluded, at syllabus point 2, that only the circuit court of the county wherein the land was located had jurisdiction to issue an injunction affecting the title to land:

Because only the circuit court of the county where the land is located has jurisdiction to consider a case directly affecting the land or its title, and venue is expressly authorized in that county by W.Va.Code, 56-1-1(a)(3) [1986], any action that directly affects land or its title must be brought in the circuit court where the land is located. To the extent that Rader v. Adamson, 37 W.Va. 582, 16 S.E. 808 (1893), indicates that venue for an action directly affecting land or its title may be based on the residence of the defendant rather than on the location of the land, it is overruled.
[13] In Eastern Associated Coal v. Doe, 159 W.Va. 200, 220 S.E.2d 672 (1975), this Court explained that an injunction which is void for lack of jurisdiction is a nullity and punishment through contempt power for disobedience of the order will not be upheld. Id. 220 S.E.2d at 677.