Walter K. HANAK and West Virginians for Taxpayers Rights, Inc., Plaintiffs,

v.

John R. TAYLOR, et al., Defendants.

Civ. A. No. 92–15–M.

United States District Court, N.D. West Virginia, Martinsburg Division.

June 9, 1993.

---

John C. Yoder, Harpers Ferry, WV, Jan Horbaly, Burke, VA, for plaintiffs.

M.E. Mowery, Alison E. Patient, WV House of Delegates, Michael R. Crane, WV Senate, Charleston, W.V, for defendants.

## MEMORANDUM

MERHIGE, District Judge.

The matter is before the Court pursuant to Defendants' motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56(c). Plaintiff Doctor Walter K. Hanak, a resident of West Virginia, and professor of History at Shepherd College, a component of the state college system, alleges that his constitutional rights are being violated by virtue of the application of Article 6, Sec. 13 of the West Virginia Constitution, which bars, *inter alia*, state employees from serving in the West Virginia Legislature simultaneously with their state employ. According to the amended complaint, Plaintiff West Virginians for Taxpayers Rights, Inc., "is a West Virginia Corporation set up by West Virginia citizens and taxpayers to promote the welfare of taxpayers of West Virginia and to discourage wasteful and unnecessary expenditures of public funds. It represents citizens, registered voters, and taxpayers of West Virginia." The organization asserts that certain Defendants are violating the Incompatibility Clause of Article 6, Sec. 13, in that they are permitted to serve in their dual capacities as workers within the public educational system at the same time they serve as members of the West Virginia Legislature.[1]

---

1. The following Defendants, all serving in some capacity in the public educational system, are served in their individual and personal capacities: John R. Taylor; Sammy D. Dalton; Charlotte Pritt; A. Keith Wagner; John M. Withers; Robert Beach; Dwight Richard Browning; Brenda K. Brum; Delores W. Cook; Tracy Dempsey; Ron A. Fragale; Paul R. Higgins; Gregory D. Martin; Jerry L. Mezzatesta; Margaret Miller; David E. Miller; Dave L. Pethtel; Roman W. Prezioso, Jr.; Sharon Spencer; and Dale Manuel. Defendant Mark A. Manchin is an employee of RESA III and is sued in his individual and personal capacity. Robert C. Chambers, Speaker of the House of Delegates of West Virginia, and, Keith Burdette, President of the Senate

Plaintiffs make three claims in their amended complaint, each stemming from the application of the Incompatibility Clause of Article 6, Sec. 13, which provides as follows:

No person holding any other lucrative office or employment under this state, the United States, or any foreign government; no member of Congress; and no person who is a sheriff, constable, or clerk of any court of record, shall be eligible to a seat in the legislature.

W.Va. Const., Art. 6, Sec. 13.[2] The claims are as follows: (1) that the application of Article 6, Sec. 13 to permit public school system workers to serve in the Legislature while at the same time barring state college professors lacks a rational basis and is violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. § 1983; (2) that it is arbitrary and capricious conduct violative of the due process guarantees embodied in the Fourteenth and Fifth Amendments to the United States Constitution to interpret and enforce Article 6, Sec. 13 in such a manner, actionable under 42 U.S.C. § 1983; and (3) the actions of the individual Defendants violates the Incompatibility Clause of Article 6, Sec. 13 of the West Virginia Constitution.

Plaintiffs seek three principal forms of relief: a declaratory judgment that interpretation and enforcement of Article 6, Sec. 13 in such a way violates Plaintiffs' constitutional rights; an order from the Court to remove individual Defendants from their positions as teachers or employees under the State educational system; and a refund by the Defendants to the taxpayers of all salaries paid to and other monies received by them as public school employees while in the Legislature. Jurisdiction is vested in the Court by virtue of 28 U.S.C. § 1343.

Article III of the United States Constitution limits the judicial power of the federal courts to resolving actual cases and controversies. As a threshold matter, the Court must ascertain whether the Plaintiffs in the instant action have standing to have their claims adjudicated by the Court. "Standing asks whether a party has a sufficient personal stake in the outcome of an otherwise justiciable controversy to obtain relief through a judicial resolution of that controversy." *Finlator v. Powers*, 902 F.2d 1158, 1160 (4th Cir.1990). "Generally, a party has standing to bring a case if the party personally has suffered some actual or threatened injury arising from the putatively illegal conduct of the defendant, the demonstrated injury fairly can be traced to the challenged action, and the injury is likely to be redressed by a favorable decision of the court." *Id.* Standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

As to Plaintiff Hanak, the Court concludes that he lacks standing in several respects. As a threshold matter, Hanak is unable to allege that he has been *injured.* In *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 688, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973) the Court stated the injury-in-fact requirement as follows: "A plaintiff must allege that he has been or will in fact be perceptively harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action." Under W.Va.Code § 3–5–7, Hanak cannot declare his candidacy before the second Monday of January, 1994. Thus, anything Hanak has done in the way of de-

---

of West Virginia, are being sued only in their official capacities.

2. The apparent rationale for the drafting and ratification of Article VI, Sec. 13 was stated by Office of the Attorney General as follows:

Clearly, the Citizens' Advisory Commission [on the Legislature] was concerned with the propriety and social desirability of permitting State employees to serve in the Legislature. Apparently, it was doubted that a legislator

could be depended upon to adequately represent the people of his county or district while remaining an employee of a State government. Thus the Commission recognized, and decided to eliminate, all possible conflicts of interests that might exist whenever the same person is simultaneously a State legislator and a State employee.

7 Op. Att'y Gen. 22, 30 (1971).

claring his candidacy is premature;[3] accordingly, any injury is speculative.

■ Furthermore, for standing to exist, the injury asserted must be one "likely to be redressed by a favorable decision of the court." *Finlator,* 902 F.2d at 1160. Here, if the injury being asserted is the inability of Plaintiff Hanak to maintain his position as a college professor while also serving in the Legislature, it is not an injury likely to be redressed by a decision of this Court. In *Wilson v. Moore,* 346 F.Supp. 635 (N.D.W.Va.1972), a three-judge panel of this Court upheld the *per se* constitutionality of the provision at issue here. The *Wilson* Court held that a member of the Fairmont State College faculty, a state-supported institution under the control of the West Virginia Board of Regents, was properly disqualified from assuming a seat in the House of Delegates that he had won. Hanak's status as a faculty member of Shepherd College is virtually indistinguishable from that of the main plaintiff in *Wilson;* the Court discerns no reason to reconsider the propriety of the *Wilson* Court's conclusion. Indeed, the result here is even more compelling given that in *Wilson* the plaintiff actually had been elected to the Legislature and thereafter was excluded from his seat. Here, as discussed above, Hanak is not yet even a formal candidate for the Legislature.

■ The Court also concludes that Plaintiff West Virginians for Taxpayers Rights, Inc. lacks standing as the organization is capable of asserting only a "generalized interest," rather than a requisite concrete injury. In the seminal case *Warth v. Seldin,* 422 U.S. 490, 511, 95 S.Ct. 2197, 2211–12, 45 L.Ed.2d 343 (1975), the Court stated as follows:

> [t]here is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the organization itself may enjoy. Moreover, in attempting to secure relief from injury to itself the association may assert the rights of its members, at least so long as the challenged infractions adversely affect its members' associational ties.... The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.

In short, there exists a prudential rule that bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves. *Id.* at 509–10, 95 S.Ct. at 2210–11. Here, the amended complaint alleges no injury to either the organization or its individual members. The prayer for relief requests that the individual Defendants be ordered to refund all monies received by them for service as public school employees while they served in the Legislature. However, this bare request does not confer standing; there must be some finding that the payment of monies was inappropriate or was paid in violation of some law that inured to the benefit of the organization. The organization has been deprived of no right; at best, it seeks to assert the rights of persons excluded from the Legislature or those who may have been harmed by an alleged improper seating of defendants in the Legislature.

The Court's holding in *Wilson* does not compel a contrary result. The citizens there sued as registered voters who had voted for their fellow named Plaintiff. Their alleged injury was that their candidate, Plaintiff Wilson, had been wrongfully excluded—after having been duly elected by the citizens of his voting district. Here, the organization asserts that wasteful spending occurs; such an allegation amounts to a mere taxpayer suit, which customarily is not actionable. *See Doremus v. Bd. of Education,* 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952) (must show direct pecuniary injury). The organization here alleges no direct pecuniary injury as a result of the alleged wrongful behavior. Moreover, its asserted commitment to "rep-

---

**3.** On January 4, 1993, Hanak submitted an official "Precandidacy Registration Form" with the Jefferson County, West Virginia Clerk. This form relates that Hanak is "undertaking precan-

didacy financing and expenditures ... to determine the advisability of becoming a candidate and preparing to become a candidate...."

resentative government" in itself does not suffice to confer standing. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (rejecting attempt to preserve the Establishment Clause in the United States Constitution). The *Valley Forge* Court provided wisdom directly apposite to the case at bar:

> although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees.

*Id.* at 485–86, 102 S.Ct. at 765. *See also Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (potential conflict of interest among members of Congress not constitute concrete injury under Incompatibility Clause).

In sum, Plaintiffs lack standing to assert their claims in this Court.[4] Some time ago the Supreme Court stated that the requirement of an actual injury redressable by the court serves several policies embodied in Article III. "It tends to assure that the legal questions presented to the court will be resolved, not in the rarefied atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College,* 454 U.S. at 472, 102 S.Ct. at 758, 70 L.Ed.2d 700. In the case at bar, Plaintiffs cannot show actual concrete injury, regardless of the possible theoretical virtue of any claim they may have. A potential retort to this conclusion was addressed in *Schlesinger,* where the Court stated that "[o]ur system of government leaves many crucial decisions to the political processes. The assumption that if respondents have no

standing to sue, no one would have standing, is not a reason to find standing." *Id.* 418 U.S. at 227, 94 S.Ct. at 2935.

■ Moreover, *assuming arguendo* that Plaintiffs were to have standing, Plaintiffs would not be entitled to relief. The gravamen of Plaintiffs' federal constitutional claims is that certain Defendants have been permitted to serve in the Legislature because of an improper application of the Incompatibility Clause of Article 6, Sec. 13 of the West Virginia Constitution. The Court concludes that as a matter of law these claims fail.

A review of West Virginia statutory and case law leads to the conclusion that public school employees, such as the individual Defendants here, are not properly deemed state employees and hence their service in the Legislature does not violate Article VI, Sec. 13. In *Meadows v. Hey,* 184 W.Va. 75, 399 S.E.2d 657 (1990), the Supreme Court of Appeals undertook an expansive analysis of the classification of public school employees. The Court first noted that the State Constitution, Art. XII, Sec. 1, proclaims that "the Legislature shall provide, by general law, for a thorough and efficient system of free schools." *Id.* 399 S.E.2d at 660. Further, the Court observed that state statutory law cedes to the State Board of Education extensive oversight and regulatory powers over public school employees. *Id.* These facts notwithstanding, the Court proceeded to state as follows:

> However, the power of the State Board of Education is diluted by W.Va.Code § 18–5–1 *et seq.* (1988), which sets out the powers and duties of county boards of education. West Virginia Code § 18–5–1 *et seq.,* provides the county with the authority to control and manage their individual school districts. West Virginia Code § 18A–2–2 states that all teachers will execute a contract with their county boards of

---

4. The first two counts seek a declaratory judgment that plaintiffs' equal protection and due process rights were violated. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that the Court "may declare the rights and other legal relations of any interested party seeking [relief], whether or not further relief is or could be sought." The Act is to be construed liberally and Rule of Civil Procedure 57 should be employed

to achieve this goal. However, this premise does not obviate standing requirements insofar as Article III justiciability is concerned. The Act and Rule 57 are not jurisdictional; they "are procedural only and merely grant authority to the courts to use a new remedy in cases over which they otherwise have jurisdiction." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* at 575.

education, which provides the salaries.... West Virginia Code § 18–5–15(a) provides the county boards with the power to provide the employment term for teachers within the legislatively prescribed limits. In addition, the county school board possesses authority to 'suspend or dismiss' a teacher from employment.... W.Va.Code § 18A–2–8.

*Id.* In sum, the Court held that "a county school board is the exclusive employer of the teachers in that county." *Id.* Two years earlier, the Court provided a similar overview of the apportionment of power as to the employment of public school employees:

> The jurisdiction of a school district includes all the territory in one county ... and the [county school] board is given broad authority to control and manage the schools and school interests for all school activities and upon all school property. The board's powers include, but are not limited to, the power to: establish schools; close schools; employ teachers and assign them; employ other personnel; and, make rules and regulations for the government of the schools. W.Va.Code, 18–5–13 (1988).

*State ex rel. Dilley v. W.Va. Public Employees Retirement System,* 180 W.Va. 24, 375 S.E.2d 202, 204 (1988). The record is replete with evidence that the individual Defendant school employees are properly deemed county rather than state employees and summary judgment in favor of Defendants is therefore appropriate.[5]

Summary judgment should be entered in favor of a movant only if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this determination, the Court must draw all inferences from the established or asserted facts in favor of the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Even under this deferential standard, the Court is compelled to conclude that summary judgment in favor of Defendants is appropriate.

An appropriate Order to this effect shall issue forthwith.

## ORDER

For the reasons stated in the accompanying Memorandum, and deeming it just and proper so to do, it is hereby ADJUDGED and ORDERED that summary judgment be entered in favor of Defendants.

Let the Clerk of Court send a copy of this Order and the accompanying Memorandum to all counsel of record.

---

**5.** Plaintiffs attach great significance to a 1992 takeover by the State Board of Education of the Logan County, West Virginia public school system. According to Plaintiffs, this occurrence "confirms the Plaintiffs' position that public school teachers in West Virginia are under the ultimate control and authority of the State, and are therefore employees under the State." The Court disagrees. The extraordinary emergency steps undertaken in the Logan County takeover in no way compels the conclusion that public school employees are properly considered employees of the State, especially given the clarity of the statutory and case law in this regard as discussed above.